In the Matter of the Estate of SAMUEL NIEDELMAN, Deceased. HILDA NIEDELMAN et al., Appellants; FREDERICK W. MARQUAND, as Executor and Trustee of SAMUEL NIEDELMAN, Deceased, et al., Respondents.

First Department, July 3, 1958.

292

*Leonard G. Bisco* of counsel (*John E. Higgiston, Jr.*, with him on the brief; *Newman & Bisco*, attorneys), for appellants.

*R. John Urevich* of counsel (*Frederick W. Marquand*, in person, with him on the brief; *R. John Urevich*, attorney), for Frederick W. Marquand, executor and trustee, respondent.

*Gerard V. Murphy*, special guardian.

M. M. FRANK, J. The prime question posed on this appeal is whether a trust created by a decedent for the benefit of a surviving spouse, which provides for a principal share equal to or greater than the intestate share, is in violation of the Decedent Estate Law (§ 18), if the trust is subject to termination before the death of the surviving spouse and in that event the spouse would take the trust principal as an absolute gift.

We are inclined to believe that the problem is no longer one of first impression, although no reported case deciding the precise question was brought to our attention by the litigants.

The dissenting opinion quite correctly states that all of the surviving beneficiaries and remaindermen are in complete accord with the widow and join in her effort to elect to take against the trust created under the will. In fact, the only opposition to the petitioner's application comes from the sole executor and trustee who qualified and consented to serve, of the two designated by the testator. We shall disregard, for the moment, the question of the limited right of election to take $2,500, as provided in section 18.

The claim that the election to take, as in intestacy, may properly be exercised here is predicated upon the widow's assertion that the trust created: (1) is not a trust for life; (2) that the broad powers given the trustee, including the power to terminate, render the trust illusory; and (3) that the testator did not provide a fair cross section of the estate for his widow's proportionate share.

The deceased and his surviving widow held all the outstanding stock of a corporation that he actively managed in his lifetime. The decedent's 90% stock interest, valued at $326,888, was the only asset left in his estate after the other property was used for the payment of debts, administration expenses and taxes. Had the decedent died intestate, the widow would have taken 50% of this asset. By the terms of the trust, 60% is set aside for her, so that the trust exceeds her share as in intestacy, and in that respect complies with the Decedent Estate Law. Although

subdivision (a) of paragraph Second of the will provides, " To my wife, Hilda Hiedelman, the net income from the trust of 60% of such capital stock established for her benefit for and during the term of her natural life, unless sooner terminated as hereinafter provided ", the petitioner contends that the trust is for less than life and is therefore violative of section 18. This is so, it is urged, because in paragraph Third the trustee may sell the corpus of the trust, i.e., the stock, or liquidate the corporation, and if he should, the trust terminates and the principal may be distributed to the life tenants absolutely. Certainly it cannot be disputed that if the testator had provided that upon a sale of the stock or liquidation of the corporation, the proceeds were to be retained in the trust and invested in other permissible securities, no right of election could be validly exercised.

To sustain her contention, the petitioner places great reliance upon *Matter of Byrnes* (141 Misc. 346, affd. 235 App. Div. 782, affd. 260 N. Y. 465). In *Byrnes*, the testator created a trust of the residuary of his estate " during her life, or until her remarriage." (P. 468.) She could never receive principal, and income would cease upon remarriage. It is evident, then, that if Margaret Byrnes remarried, she would be deprived of the income from the trust ostensibly created for her benefit during her lifetime. Such a situation the Court of Appeals said (p. 472) " could not reasonably be regarded as substantial equivalents for the intestate share."

In discussing the purpose of the Decedent Estate Law, the Court of Appeals quoted the following excerpt, with approval, from the report of the commission which recommended the adoption of section 18 of the Decedent Estate Law (p. 472): " ' Therefore, in the larger estates the Commission proposes to preserve to the testator a right to create a trust, with income payable to the wife, upon a principal equal to or greater than her intestate share.' (Leg. Doc. [1930] No. 69, p. 87.) "

The entire tenor of section 18 of the Decedent Estate Law indicates that the Legislature intended that a surviving spouse, absent issue, should receive 50% of the decedent's estate in intestacy, or its equivalent under a will, either by outright devise of at least 50%, or the income from a trust whose principal be not less that that proportion. Scattered through the various subdivisions are words that indicate that the survivor's share in intestacy shall not be construed to mean more than one half of the net estate; that the provisions with respect to a trust shall likewise apply to a legal life estate, an annuity or any other form of income for life, and that the granting of broad powers to an

executor or a trustee with respect to the sale, retention or allocation of the trust property shall not give to the surviving spouse an absolute right of election. All of these provisions demonstrate that the legislative purpose was to create minimal provisions for a trust and not to prevent bequests in excess thereof, and certainly not to invalidate a trust for life which may terminate before the death of the survivor if the termination results in an outright gift of the entire trust *res*.

We do not believe that *Matter of Byrnes* is to the contrary. In that case, the vice in the life estate was not its termination short of the death of the life tenant, but the deprivation of the minimal intestacy equivalent by the termination. Therefore, while the trust in *Byrnes* was held violative of section 18 because the widow was deprived of the equivalent of her intestate share in that estate, we do not believe it to be authority for our problem because the same result does not follow. Here, in the event of a termination of the trust created for the life of the petitioner prior to her death, she would receive as an outright bequest the entire corpus of the trust created for her benefit, and that would be 10% more than she would be entitled to receive as her share of the estate in intestacy.

The common-law rule that a trust for life terminating upon a contingency is nevertheless still a life estate has not been abrogated by *Byrnes*. The Court of Appeals in that case so stated and did not hold that trusts for life terminable upon a contingency are less than life estates. What it did say is (p. 472): " We think that the Legislature had no thought to deprive a surviving spouse of an election, where a will made gifts in trust for life for the use of the spouse, which, while technically life estates, could not reasonably be regarded as substantial equivalents for the intestate share."

The provisions of section 18 were enacted for the liberal purpose of protecting a spouse against disinheritance (*Matter of Byrnes*, 260 N. Y. 465). When there is a fair participation by the spouse in the estate, the right to elect disappears (*Matter of Eddy*, 173 Misc. 723, 726). Here there is no disinheritance, there is no diminution, but rather an enlargement to the wife of the trust bequest upon termination before death. There is in the devisory scheme, complete adherence to the mandate of section 18. The term " trust for life " should not be so restricted as to give it a meaning not heretofore applied.

We believe the precise point with which we are here concerned was considered and properly decided in *Matter of Noble* (3 Misc 2d 565, mod. 2 A D 2d 897). There the will created a trust for

the surviving spouse with income payable to her, and additionally provided that each year, 10% of the corpus was to be paid to her until she received the entire fund, if she survived the required length of time. The learned Surrogate held the trust was not violative of section 18. The Appellate Division, Second Department, in unanimously affirming on this point, said, "No right of election exists by reason of the provision in the will for periodical payments of principal". On that phase of *Matter of Noble,* there appears to be no essential difference from the question raised here.

There was no allocation of the corpus in this estate to favor other beneficiaries. The entire estate remaining after the payment of debts and other charges consists of the corporate stock, so that the widow has as complete a cross section of the assets as it was possible to provide. The claim that corporate control by the trustee creates the possibility of a conflict of interest, as well as the suggestion that the broad powers given the trustee do not assure the widow of income, and separately or together make the trust illusory, are without merit. In *Matter of Shupack* (1 N Y 2d 482), the same propositions were urged upon and rejected by the Court of Appeals. We should not decide otherwise.

Courts may not vary or void the terms of a valid will by the exercise of judicial hindsight in order to improve upon the decedent's scheme of testamentary disposition. It is the obligation of the courts to endeavor to fulfill the testator's intention, if the terms of his will are not violative of statutory restrictions. To do otherwise is to tread into the quicksand of conjecture.

It should not be assumed that this decedent arranged for the disposition of his property improvidently, for it may well be that concern for his widow and his knowledge of the nature of the corporate business wisely dictated the provision for the administration of this major asset.

The allowance made to the special guardian is a proper charge against the entire estate or against the interest of the wards (Surrogate's Ct. Act, § 280) and should not have been charged against the interest of the petitioner in the trust fund. In this case the allowance should be charged against the estate.

The decree should be modified on the law to the extent indicated and as modified should be affirmed, with costs to all parties filing briefs payable out of the estate.

STEVENS, J. (dissenting). This is an appeal from so much of a decree of the Surrogate's Court, entered April 4, 1958, as

determined that the widow had no absolute right of election under section 18 of the Decedent Estate Law, and which charged her interest in the estate with the entire compensation allowed the special guardian.

The decedent left a mother, wife, and three sisters him surviving, but no issue. All support the widow's position and appeal separately from the same determination.

Decedent was survived also by certain nieces and nephews represented here by the special guardian, who recommends recognition of the widow's right of election as in the best interests of his wards.

The questions presented are: (1) has the widow an absolute right of election, and (2) was her interest properly charged with the entire compensation allowed the special guardian?

Considering the questions in reverse order the answer to (2) must be in the negative. Compensation of a special guardian is to be " fixed by the surrogate, payable from the estate or fund, or from the interest of the ward therein, or from both in such proportion as the surrogate may direct." (Surrogate's Ct. Act, § 280.)

Whether the widow has an absolute right of election must depend upon the language of the instrument creating the trust, read in light of the provisions of section 18 of the Decedent Estate Law.

The will created two trusts, the corpus of which consisted of 2,400 shares of the capital stock of Aviquipo, Inc. These shares represented 90% of the issued and outstanding stock of the corporation, the remaining 10% being owned by the widow.

The stock was bequeathed to his trustees with a direction that they hold 60% of same for the benefit of the widow for life with testamentary power of appointment, and 40% for the benefit of his three sisters who, with their children were remaindermen of the widow's trust in the event she failed to exercise her power of appointment.

The residuary estate was bequeathed and devised by the testator, 60% to his widow and 40% to his sisters. Paragraph " SIXTEENTH " of the will provided that " All transfer, estate, inheritance and succession taxes on all legacies, bequests and the trusts " should be paid out of the residuary estate.

The other assets of the testator which would fall into the residuary estate amounted to $51,811.13, and had an approximate annual income of $2,370. It is agreed that such other assets will be insufficient to cover the expenses referred to in paragraph " SIXTEENTH ", so there will be no residuary estate.

The stock of Aviquipo, Inc., constituting the trusts had a value of $326,888, and had never paid a dividend since its creation in 1933. Petitioner claims that for the three years preceding decedent's death the corporation actually had an operating loss of over $6,000.

Respondent-trustee claims the company could have paid a dividend prior to the death of the decedent, though he does not dispute that none was paid, and asserts that the decedent drew a salary of $36,000 per year, and sums for expenses from the corporation. In the fiscal year following the death of the decedent dividends amounting to $7,200 were paid.

The will, after establishing the trusts, provided that the trustees (it is now a sole trustee, the other executor and trustee having renounced in both capacities) should "at all times retain complete control of the management and affairs of said corporation and to direct its operation and affairs," etc.

Paragraph "THIRD" of the will stated: "Anything hereinbefore contained to the contrary notwithstanding, my Trustees shall at any time have full power and authority to sell said stock in Aviquipo, Inc. or to liquidate the corporation, if in their sole discretion they shall deem it inadvisable to continue to operate the business or shall deem it to the best interests of the beneficiaries of the estate so to do, and in such case the trusts shall terminate and the principal thereof shall be paid over to the life tenants as they exist at the time of the termination of the said trust, to have and to hold the same forever. My said Trustees shall not be held liable or responsible for any loss arising from the exercise of any of the powers hereby granted, or for loss in the operation of the business."

It may be noted that there is an absolute right of termination of the trust at the will of the trustee if he deems it inadvisable to continue the business or to the best interests of the beneficiaries so to do. The single standard is his discretion.

The trustee as an officer or employee of the corporation is entitled to receive "reasonable compensation from such corporation as such officer or employee in addition to the usual Trustee's commission." Additionally, the interest of beneficiaries could become opposed.

The situation is pregnant with the possibility of conflict of interests. The welfare of the widow as the *cestui que trust* need not be the paramount factor leading to the ultimate conclusion that the trust should or should not be terminated.

So far as it is pertinent, section 18 of the Decedent Estate Law grants to a surviving spouse the right to take his or her share

as in intestacy, subject to the following limitation and condition: " (e) Where the will contains an absolute legacy or devise, whether general or specific, to the surviving spouse in an amount less than the sum of twenty-five hundred dollars and also a provision for a trust for his or her benefit *for life* of a principal equal to or more than the excess between said legacy or devise and his or her intestate share, the surviving spouse shall have the limited right to elect to take not more than the sum of twenty-five hundred dollars inclusive of the amount of such legacy or devise, and the difference between such legacy or devise and the sum of twenty-five hundred dollars shall be deducted from the principal of such trust fund and the terms of the will shall otherwise remain effective.'' (Emphasis supplied.)

Is this then a trust '' for life '' within the meaning of the statute?

This case may be distinguished from *Matter of Shupack* (1 N Y 2d 482). There the widow entertained fears that the quantum of '' her income may be impaired by hostile majority owners '' (p. 487), and the court held '' the fear or possibility of misconduct on the part of the trustee or of the corporate directors, managing the property, does not give rise to a right of election under section 18.'' (P. 489.)

In the instant case termination of trust by disposition of principal and resulting cessation of income may occur at any time short of the widow's life.

In *Matter of Byrnes* (260 N. Y. 465) the court held that a testamentary gift in trust for the life of a surviving spouse or until she remarries, was not a trust for life within the meaning of section 18 of the Decedent Estate Law so as to preclude the right of election.

In that case termination of the trust was dependent upon an act of the beneficiary and might never have occurred. But the power of limitation upon happening of the condition was contained in the instrument establishing the *res*. It must be pointed out also that in the event of remarriage all benefits were lost to the *cestui*.

There are striking parallels. Here the trust is for life or until the trustee decides to terminate the trust. As in the *Byrnes* case the decision may never be made but the possibility of extinction remains. The legal effect is that it need not be a trust for life, but is a trust terminable at the will of another. That the proceeds of the corpus, when and if sold, would be distributed to the widow is not controlling.

The right of a surviving spouse to an interest in the estate of. a deceased spouse attached at death. The ascertainment of the quantum of interest may await later determination dependent upon written instrument and/or statute.

In an address to the New York State Bar Association in 1929, explaining the purpose of section 18, GEORGE A. SLATER, then Surrogate of Westchester County, pointed out that the statute provides " these intestate rights shall obtain as against any will that a testator may make, with the *exception* that the testator may create a trust in such an amount as the intestate share may be, or for a larger amount, with income payable to the surviving spouse for life." (Combined Reports of Decedent Estate Comm., Reprint, p. 166.)

The statute sought to provide for the immediate necessities (p. 180) and provided a limitation " by way of permitting the income only upon the balance of the intestate share to be paid over *during the life of the surviving spouse.*" (Emphasis supplied.) (Combined Reports of Decedent Estate Comm., Reprint, p. 19 [Leg. Doc. No. 70].) The report refers to the excess amount being placed in trust " with income thereon payable to her for life ", and as affording an opportunity to the husband " to relieve the wife of the burden of investment and care of her portion of the avails of his estate by placing such excess amount in the form of a trust, and he is also able to safeguard the principal of her share against a spendthrift wife." (P. 20.)

In the *Byrnes* case the testator left more than one half of his estate in trust, with income to his wife for life or until her remarriage. Surrogate FOLEY, one of the architects of section 18, remarked (*Matter of Byrnes*, 141 Misc. 346, 347–348, *supra*) " If this trust had been a simple one for the life of the wife and the income had been given to her without condition for its earlier termination, the will would have satisfied the statutory requirements and the widow would have been barred from her election. * * *

" Section 18 of the Decedent Estate Law clearly requires that the life estate — equitable or legal — for the wife must be subject to no condition or contingency by which it may be terminated during her lifetime." (*Matter of Byrnes*, 141 Misc. 346, 348.) The Surrogate referred to " a grant of discretion to trustees, possibly hostile to the wife, to terminate her income at their pure personal pleasure. All these forms of defeasance were anticipated and guarded against in the new statute. Under it the beneficial interest of the life tenant of the trust, or the legal life estate, or the annuity must be for the duration of her life without any condition or contingency whatsoever." (P. 349.)

Giving the language "for life" its ordinary meaning as determined by common usage it is clear that it refers to a period "throughout her life". (See, also, *Matter of Byrnes,* 260 N. Y. 465.)

This property was not income-producing at the time of the death of the decedent, it may or may not continue to be income-producing (cf. *Matter of Clark,* 1 A D 2d 567) and the value of the principal at the time of termination of the trust by sale of the corpus, might or might not be the equivalent in value of her present interest under intestacy. This is a closed corporation and the value of its stock at the time of possible disposition is subject not only to the hazards inherent in our economy, but to a discretion which could operate irrespective and independent of such conditions. In such case the widow has been subject to a deferred right of enjoyment, possibly without any compensating income. The burden of worrying about investment, which the statute sought to alleviate if not avoid, may fall when the widow is least prepared.

There lies in the situation created by the testator uncertainty whether the trust is actually for the widow's "benefit for life" as the statute requires. This uncertainty is due first of all to the uncontrolled discretion of the trustee to terminate the trust as he chooses; but more particularly to his uncontrolled discretion to select the time for termination, which might, badly chosen, be quite destructive of the requirement that the trust benefit the widow "for life". The duration of the benefit expressly granted should not thus be left open and contingent and equivalency is not a complete answer to a failure to assure the trust benefit for life.

This case is somewhat unique and does not fall squarely into any well-defined category. It is not intended to establish a broad and all inclusive principle. Rather, on the facts peculiar to this case, it is determined *that this is not an estate for life.*

I therefore dissent in part and vote to grant an absolute right of election to the widow.

RABIN, J. P., and McNALLY, J., concur with M. M. FRANK, J.; STEVENS, J., dissents in part, in opinion, in which BERGAN, J., concurs.

Decree modified on the law to the extent indicated in the opinion by M. M. FRANK, J., and, as so modified, affirmed, with costs to all parties filing briefs, payable out of the estate.

Settle order.