Jasen, J.
This appeal raises questions of first impression concerning the construction of EPTL 5-1.1. Specifically, we are asked to decide whether money deposited in Totten trust[1] savings accounts subsequent to August 31, 1966, from funds previously on deposit by the decedent in similar accounts in the same and other banks prior to August 31, 1966, are subject to the surviving spouse’s right of election.
The petitioner, Florence Agioritis, married the decedent in 1950 and lived with him continuously until his death in 1973. The decedent died intestate and without issue, leaving a gross estate of approximately $800,000, of which more than $650,-000 consisted of savings bank accounts in the name of decedent in trust for various collateral relatives living in Greece. None of these beneficiaries contributed to the amounts on deposit in these bank accounts and decedent retained control over all of the accounts during his lifetime.
After letters of administration were issued to the petitioner, she filed a notice of intention to take her elective share of the estate under EPTL 5-1.1 (subd [b], par [1], cl [B]), which provides a surviving spouse with the right to treat as a testamentary substitute money deposited in Totten trust savings accounts after August 31, 1966.
The two types of Totten trust savings accounts against which the petitioner has asserted a right of election consist of (1) deposits made by this decedent in a Totten trust account subsequent to August 31, 1966 from funds withdrawn by the decedent from a pre-August 31, 1966 Totten trust account in another bank in the name of the same beneficiary; and (2) deposits made by the decedent in a Totten trust savings account subsequent to August 31, 1966 from funds withdrawn by the decedent from a pre-August 31, 1966 Totten trust account in another bank in the name of a different beneficiary.
The petitioner argues that, as surviving spouse, she possesses a right of election under EPTL 5-1.1 against all "Money deposited” by the decedent subsequent to August 31, 1966 in Totten trust savings accounts, from whatever source the de *648 posits originated, and remaining on deposit at decedent’s death.
The respondent-appellant, as attorney in fact for the Greek beneficiaries named in the Totten trust bank accounts involved in this proceeding, contends that "the legislative history of EPTL 5-1.1 does not justify a strict construction of that statute” and that moneys deposited in Totten trust bank accounts prior to August 31, 1966 are not subject to the surviving spouse’s right of election simply because the funds were transferred from one account to another subsequent to August 31, 1966 or because he changed or added a beneficiary subsequent to that date.
We are, therefore, required to construe EPTL 5-1.1 (subd [b], par [1], cl [B]) which provides that the following transaction is a testamentary substitute subject to the surviving spouse’s right of election: "(B) Money deposited, after August thirty-first, nineteen hundred sixty-six, together with all dividends credited thereon, in a savings account in the name of the decedent in trust for another person, with a banking organization, savings and loan association, foreign banking corporation or organization or bank or savings and loan association organized under the laws of the United States, and remaining on deposit at the date of the decedent’s death.”
To ascertain the legislative intent underlying this statute, a brief historical review of a surviving spouse’s right to an elective share in the estate of a deceased spouse is necessary.
Prior to September 1, 1930, a surviving spouse had only limited rights in the estate of a deceased spouse. (Decedent Estate Law, § 98.) In 1929 a unified statute of descent and distribution was enacted giving the spouse larger participation in the decedent’s intestate property and a right to elect to take a share of the decedent’s testate estate. (Decedent Estate Law, § 18.) In essence, section 18 permitted a surviving spouse to elect to take a specific share of the estate of the decedent, but the share, denominated the "share as in intestacy”, was limited to assets which passed under the decedent’s will. While the new statute gave the surviving spouse greater protection than before, the statute failed to cover inter vivos transfers made by the decedent or various situations where title passes by operation of law on death of the settlor. Thus, a decedent could denude his estate by use of an inter vivos trust in favor of beneficiaries other than the surviving spouse.
The early solution to the problem was to prohibit persons *649 from disposing their property if the sole motive for the transfer was to defeat the rights of the spouse. (Bodner v Feit, 247 App Div 119.) However, this test raised as many questions as it attempted to solve since not only did it demand an inquiry into the state of mind of a decedent, but it also failed to protect the spouse of a person who had no motive or intention to defraud his spouse but merely had property in another form of ownership. Our court rejected the "motive” test in Newman v Dore (275 NY 371) and held that a revocable inter vivos trust with a retained life interest with all investment and management powers reserved to the settlor was illusory insofar as an electing spouse was concerned. However, in 1951, in Matter of Halpern (303 NY 33, 38), our court said "[t]here is nothing illusory about a Totten trust as such”, and held, in substance, that a Totten trust account could be used effectively to defeat the expectant distributive share of a surviving spouse.
As a result of this decision and the cases following Halpern, the Legislature, recognizing that existing law was inadequate to protect the surviving spouse, authorized a study of the matter for the purpose of drafting new legislation. (Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates [hereinafter Temporary Commission on Estates], Report No. 1.5C, Jan. 24, 1964, NY Legis Doc, 1964, No. 19, pp 117-190; Temporary Commission on Estates, 1965 Supp to 1964 Report Nos. 1.5C, 1.10B, April 30, 1965, NY Legis Doc, 1965, No. 19, pp 137-153; see, also, 1964 and 1965 Reports of the Committee on Surrogate’s Court of the Association of the Bar of City of New York.) After several years of study, the Temporary Commission on Estates made proposals to the Legislature which were enacted as sections 18-a and 18-b of the Decedent Estate Law.[2] With some modifications in language not relevant here, consistent with the style of the Estates, Powers and Trusts Law, the new section became EPTL 5-1.1.
Subdivision (b) of the new law is germane to our analysis. In the 1964 commission report,[3] the various devices used to frustrate the statutory scheme are colated and discussed. The commission concluded that Totten trust bank accounts were will substitutes in the sense that the decedent could enter into *650 the transaction, and thereafter, until his death could maintain full control over the property as he had at the time he established the fund. "If any inter vivos device appears to be testamentary, it is the Totten trust * * * It is all but unanimously agreed that the surviving spouse cannot be protected until the Halpern decision is overcome.” (Temporary Commission on Estates, Report No. 1.5C, at p 124.) The commission recommended "an extension of [the then existing] section 18 to cover not only the will but certain other transactions which are in fact, though not in law, equivalent to testamentary disposition.” (Temporary Commission on Estates, Report No. 1.10C, dated Jan. 16, 1974, NY Legis Doc, 1964, No. 19, at p 224.) "To remedy this situation”, the commission recommended "that the right of election be extended to give the surviving spouse the right to elect against 'testamentary provisions’ even where the decedent has died intestate.” (Temporary Commission on Estates, Report No. 1.10C, at p 230.)
We agree with the Appellate Division "that in adopting the recommended legislation with respect to testamentary substitutes, the Legislature, as a matter of policy, overruled the doctrine of the Halpern case, and decided that Totten trusts should be subject to' the right of election and to the testamentary substitute doctrine, so far as constitutionally permitted.” (52 AD2d 128, 134.)[4] The Legislature, in enacting EPTL 5-1.1, intended to expand and protect the rights of the surviving spouse by including Totten trust bank accounts as testamentary substitutes, thereby increasing the assets which would be part of the decedent’s estate against which a surviving spouse could exercise her right of election. Indeed, the language of the section itself reflects the remedial purpose intended by the Legislature. It explicitly states that all "[m]oney deposited, after August thirty-first, nineteen hundred sixty-six, together with all dividends credited thereon, in a savings account in the name of the decedent in trust for another person” is a testamentary substitute subject to a surviving spouse’s right of election. The fact that "money deposited” after August 31, 1966 was withdrawn from Totten trust accounts exempt from the new enactment does not remove the transaction from the coverage intended by the Legislature. We believe the Legisla *651 ture intended that a surviving spouse possess a right of election under EPTL 5-1.1 against all "money deposited” by the decedent subsequent to August 31, 1966, in Totten trust savings accounts, from whatever source the deposits originated, and remaining on deposit at decedent’s death. In reaching this view, we construe the statute to have a plain and literal meaning that is consistent with the Legislature’s purpose to enlarge the assets against which a surviving spouse could assert her right of election. We hold that a change of either beneficiary or depositary bank constitutes a new deposit of money within the meaning of the statute. By recognizing that these transactions involve a new deposit of money, the assets that are subject to the surviving spouse’s right of election are thereby increased and the legislative purpose fulfilled.
Our decision today rests on the same rationale that we employed in Matter of Greenberg (261 NY 474). Section 18 of the Decedent Estate Law then provided that a surviving spouse could only elect against wills and codicils executed after August 31, 1930. The issue in Greenberg was whether assets distributed under a 1927 will were captured through a codicil executed after August 31, 1930. The legatees suggested that we read the statute to only apply to assets affected by the codicil. This court held that it would do violence "to the legislative intent, if we said that the testator did not re-execute the will within the meaning of the statute when he executed the codicil.” (At p 479.) Similarly recognizing the legislative intent behind the present statute, we hold that the decedent redeposited the money in transferring the funds from one account to another and thereby subjected it to the surviving spouse’s right of election.
We also agree with the Appellate Division that withdrawals from Totten trust bank accounts, both prior and subsequent to August 31, 1966, should be deemed to have been made from money first deposited. While the statute is totally silent on the applicable method of accounting, we would apply a first-in— first-out method since it fosters the Legislature’s intention to increase the assets subject to elective rights. A contrary holding would preserve an exemption despite the decedent’s intentional withdrawal of the funds. Moreover, a first-in—first-out approach is in accord with the standard used for negotiable instruments and with the rule generally applied to the *652 order of debt payment. (See 41 NY Jur, Negotiable Instruments, § 272.)
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the estate.

. So-called because of the case of Matter of Totten (179 NY 112).

. (L 1965, ch 665, eff Sept. 1, 1966.)

. (Temporary Commission on Estates, Report No. 1.5C, at pp 123-130.)

. The reason the Legislature limited the new legislation to Totten trusts, where there were changes after August 31, 1966, was the fear of constitutional infirmity if the statute was made applicable to pre-existing Totten trusts. (Temporary Commission on Estates, 1965 Supp Report, at p 152.)