OPINION OF THE COURT
C. Raymond Radigan, J.
Decedent died testate on April 7, 1993 survived by a wife W. *806 and a daughter D. His last will and testament dated January 7, 1981 was admitted to probate on July 21, 1993 and a notice of election by W. was filed on July 14, 1993.
Under the terms of his will, the decedent set up an elective share trust for W. with remainder to D. The residue of the estate is bequeathed to D. The elective share trust includes the following provision: "If the value of any interest I may have in my home located at * * * Uniondale, NY, exceeds my wife’s elective share under § 5-1.1 of the EPTL, said interest in this home is to be construed to satisfy all of my wife’s interest in my estate.” (The Uniondale home has been owned by the decedent and W. as tenants by the entirety since September 1964.)
If the marital home is determined to be a testamentary substitute, then there will be no elective share trust or even an elective share since the value of the testamentary substitutes credited to W. would exceed what would be calculated as her elective share. If, however, the home owned by the entirety is not includible as a testamentary substitute, then the widow would be entitled to an elective share of $50,000, free of any trust.
The issue of whether the marital home purchased by the decedent and W. as tenants by the entirety prior to September 1, 1966 should be treated as a testamentary substitute appears to be one of first impression. EPTL 5-1.1-A (b) (1) (E) treats as a testamentary substitute: "[a]ny disposition of property made by the decedent whereby property, at the date of his or her death, is held (i) by the decedent and another person as joint tenants with a right of survivorship or as tenants by the entirety where the disposition was made after August thirty-first, nineteen hundred sixty-six, or (ii) by the decedent and is payable on his or her death to a person other than the decedent or his or her estate.”
In the present case, it is undisputed that title to the Union-dale property has been continuously held in the names of the decedent and W., his wife, as tenants by the entirety since September 29, 1964. It would appear that a literal application of the statute to the facts would result in a determination that the real property is exempted from being treated as a testamentary substitute since its title has remained unchanged since 1964. The theory espoused by the estate is that the decedent has made a series of "dispositions” of his property post-August 31, 1966 by which the subject real property *807 continued to be held by him and his wife until his death, which dispositions cause the property to lose its exemption from inclusion as a testamentary substitute. Such "dispositions,” according to the estate, would include but not be limited to (a) every post-August 31, 1966 payment of mortgage principal or interest, (b) renovations to the basement, kitchen and attic between 1968 and 1976, and (c) a 1986 replacement of the garage door and lock.
This legal concept suggested by the estate, if accepted, would render virtually every pre-August 31, 1966 tenancy by the entirety a testamentary substitute, despite the rather clear language of EPTL 5-1.1-A (b) (1) (E). It is hard to imagine any parcel of real property purchased pre-August 31, 1966 that has not had some improvements made post-August 1966, whether it be to replace failing plumbing or wiring, plant new shrubbery, replace a roof, or, as was done in the instant case, install a new door and lock. Further, even in the unlikely event that a pre-1966 home was purchased without the need for a mortgage, it is not unlikely that such a home may have been pledged as security for a later mortgage or home equity loan. Even if such post-1966 loans were used for the personal enjoyment or obligation of the decedent (such as vacations, automobiles, college education), the repayment of such loans, according to the estate’s theory, would act to make previously exempt property a testamentary substitute. This issue of whether a post-August 31, 1966 transaction can effectively "redate” a previously exempt asset has never been decided with regard to real property owned by a decedent either jointly with another or as tenants by the entirety.
It is clear that the estate’s theory rests most heavily on the legal principles set forth in Matter of Agioritis (40 NY2d 646). In Agioritis, the Court held that funds transferred post-August 31, 1966 from previously exempt Totten trust accounts into new accounts whether it involved a change of either the beneficiary or depository bank were testamentary substitutes.*
The Court, in Agioritis (supra), did not treat the post-August 31, 1966 transfers of the Totten trust accounts into different banks as a "redating” of a previously exempt asset. Instead, the Court found that the transfers constituted "money depos *808 ited after August 31, 1966” and therefore clearly fell under the statutory definition of "testamentary substitute.” Of great significance is the fact that the Court did not hold that a single deposit, in and of itself, into an exempt pre-August 31, 1966 Totten trust account would redate the entire account making it a nonexempt testamentary substitute. Rather, the Court agreed with the Appellate Division determination that post-August 31, 1966 deposits into an otherwise exempt account constitute testamentary substitutes while post-August 31, 1966 withdrawals from the same account are deemed to have been made from money first deposited, not the money most recently deposited.
In Agioritis (supra), the Court set forth in detail the legislative history of EPTL 5-1.1 and its predecessor (Decedent Estate Law § 98). The common thread that runs through each and every change in the law is that the rights of the surviving spouse expanded with each modification, including the enactment of EPTL 5-1.1-A. In deciding Agioritis the Court stated: "we construe the statute to have a plain and literal meaning that is consistent with the Legislature’s purpose to enlarge the assets against which a surviving spouse could assert her right of election.” (40 NY2d, at 651, supra.)
In deciding this case, the court considers not only what appears to have been the clear intent of the Legislature in increasing spousal rights not decreasing them, but also the plain and simple language of the statute itself. There is nothing in the language of EPTL 5-1.1-A (b) (1) (E) that would suggest that the post-August 31, 1966 "disposition of property” referred to anything other than the transfer that created original title in the spouses.
Accordingly, the court finds that none of the post-August 31, 1966 expenditures made on behalf of the subject real property by the decedent would constitute a "disposition of property * * * whereby” the subject property was held by the decedent and W. at the time of his death. Therefore, the date of death value of premises shall not be treated as a testamentary substitute.

 Under EPTL 5-1.1 (b) (1) (C) a Totten trust account is only a testamentary substitute to the extent of ''[m]oney deposited, after” August 31, 1966. There is no such limitation as to Totten trust accounts under EPTL 5-1.1-A (b) (1) (C) (eff Sept. 1,1992).