OPINION OF THE COURT
 

 Bellacosa, J.
 

 This appeal raises for this Court’s review the question whether an inter vivas trust, in which a deceased spouse retained a limited power of appointment, constitutes a testamentary substitute in violation of the surviving spouse’s right of election (EPTL 5-1.1). The Appellate Division, with one Justice dissenting, found the trust was not subject to the right of election and ruled against the surviving spouse. This Court granted leave to appeal. We agree with the Surrogate’s Court and the dissenting Justice that the trust was a testamentary substitute under the applicable statute and, thus, we modify the Appellate Division’s order in that respect.
 

 Appellant William Reynolds and decedent Dorothy Reynolds were married in 1963 and remained wed until her death in 1989. The decedent had four children from a previous marriage. On May 11, 1989, Dorothy Reynolds, suffering from adverse health, created a trust for the purpose of qualifying for Medicaid benefits in the event that nursing home care was needed. She named two of her children from a previous marriage as trustees and, pursuant to the terms of the trust, transferred the majority of her assets to the trust while designating her children as remainder beneficiaries. As the settlor of the trust, she relinquished all right, title and interest in the property thus transferred, except for retaining the right to appoint remainder beneficiaries at any time prior to the termination of the trust. The limitation on the exercise of the retained power was that the settlor could not appoint herself, her spouse, her creditors, or her estate and its creditors. The trust agreement fixed a termination date of one day prior to the death of the settlor.
 

 Dorothy Reynolds died on August 29,1989, leaving her entire estate to her children from a previous marriage. The Surrogate’s Court, Onondaga County, admitted her will to probate
 
 *636
 
 on May 14,1991. Appellant, her surviving spouse, filed a notice of election, which was given effect by the Surrogate’s Court (EPTL 5-1.1). The election and the decree effectuating it are not at issue here.
 

 Subsequently, however, appellant filed objections to the proposed accounting for the estate. He particularly objected to the exclusion of inter vivas trust assets from the estate accounting for purposes of computing his elective share. The Surrogate sustained the objection and decreed that the assets of the trust were part of decedent’s estate.
 

 The Appellate Division disagreed and modified so much of the decree as had included the trust in the estate for purposes of determining appellant’s elective share. The Appellate Division held that the trust was not a testamentary substitute under EPTL 5-1.1 because the transfer was irrevocable and the decedent had relinquished the right to appoint herself or her estate as beneficiary. As so modified, the Appellate Division affirmed. The validity of the trust, as such, is also not at issue on this appeal.
 

 The answer to the question of whether the decedent’s inter vivas trust constitutes a testamentary substitute depends on the application of EPTL 5-1.1 (b) (1) (E). That statute ordains that a transfer of property during the lifetime of a donor may be deemed a testamentary substitute when the disposition is "in trust or otherwise, to the extent that the decedent
 
 at the date of his [or her] death
 
 retained, either alone or in conjunction with another person, by the express provisions of the disposing instrument,
 
 a power to revoke such disposition or a power to consume, invade or dispose of the principal”
 
 (emphasis added).
 
 *
 
 In construing and applying this important safeguard, this Court has strongly reinforced the legislative intent and history underlying its enactment
 
 (Matter of Riefberg,
 
 58 NY2d 134, 139;
 
 Matter of Agioritis,
 
 40 NY2d 646, 649-650).
 

 The context of this dispute is the surviving spouse’s right of election, whose roots are found in former Decedent Estate Law § 18, which, in turn, abolished the common-law rights of dower and curtesy. In their place, a surviving spouse was given a
 
 *637
 
 right to elect to take a percentage share of a deceased spouse’s estate, limited to assets passing under a will.
 

 Experience developed under that statute indicated the right of election protection for surviving spouses could be easily evaded by timely use of various inter vivas transfers. Adjudicative efforts to recapture asset transfers, which had as their sole purpose the circumvention of the rights of the surviving spouse, proved inadequate or uneven
 
 (compare, Matter of Halpern,
 
 303 NY 33;
 
 Matter of Crystal,
 
 39 NY2d 934;
 
 with Newman v Dore,
 
 275 NY 371). Thus, the Legislature initiated a special study for the purpose of proposing legislation which would more effectively protect the survival rights of spouses (3d Report of Temp St Commn on Estates ["Bennett Report”], 1964 NY Legis Doc No. 19, at 11). The Bennett Report concluded that certain inter vivas transfers should be subject to a surviving spouse’s right of election against a deceased spouse’s total testamentary dispositional plan.
 

 The Bennett Report suggested that the Legislature follow the basic approach outlined in the Report of the New York State Bar Association Committee on Trusts and Estates, which declared that "whatever test or approach is used, the following types of transfers might be considered subject to the elective rights of the surviving spouse * * * [including those]
 
 where a power of appointment has been
 
 retained” (1964 NY Legis Doc No. 19, at 138 [emphasis added]). That is the only type at issue here. While the precise proposed phrasing did not find its way into the law, the enacted version had the same goal and purpose, as reflected in EPTL 5-1.1. The history and language thus strongly demonstrate that the intent behind the "testamentary substitute” protection for the surviving spouse’s right of election was to fold into the estate those assets over which a settlor retains meaningful control in addition to the right to receive the lifetime income.
 

 Applying the reasonable and fair interpretation of the statute’s words and purpose to the instant case, we conclude that Dorothy Reynolds’ retained power of appointment, though limited, left her with meaningful control over the trust during her lifetime, in contravention of the statute’s explicit and intended protection. Because the settlor, despite her general relinquishment of title and ownership of the property, was free to designate any person, charity or entity as a beneficiary of the trust except for herself, her spouse or her estate and creditors, she possessed personal power to execute what were essentially testamentary transfers to any number of other
 
 *638
 
 specific beneficiaries of her choosing. This was a functional substitute allowing disposal of the entire trust corpus by way of one or a series of specific bequests that constitute a forbidden reserved "power to consume, invade or dispose" (EPTL 5-1.1 [b] [1] [E]). The power here to designate many beneficiaries or classes is essentially indistinguishable from the power to dispose of the principal of the trust as contemplated by the statute (EPTL 5-1.1 [b] [1] [E];
 
 see, Matter of DeVita,
 
 141 AD2d 46, 53).
 

 The respondents estate representatives nevertheless urge a narrow construction of the statute, relying on this Court’s
 
 Matter of Crystal
 
 (39 NY2d 934, supra) and the Appellate Division’s holding in the instant case. We held in
 
 Crystal
 
 that the retention of a power of appointment does not, by itself, cause a transfer to be deemed a testamentary disposition or substitute. Notably, though, the transfer there occurred prior to the effective date of the testamentary substitute statute that governs this case. Thus,
 
 Crystal
 
 does not support or compel the result that respondents urge. Moreover, the restrained reading and reach they would impose on the statutory language would frustrate the Legislature’s remedial intent to provide greater protection for surviving spouses, not only against outright disinheritance, but also against attempted lifetime evasions of the plain import of the statutory scheme and its balanced policy.
 

 A brief comment is also necessary to answer respondents’ argument that the power of appointment terminated one day prior to the settlor’s death and, therefore, was not a testamentary power. This power of appointment is no less testamentary here because it purports to expire the day before the settlor’s death, particularly since this limitation is temporally indeterminate. Since the termination date of the power cannot be ascertained with any certainty until after the death of the settlor, it is illusory in this case and effects no cognizable or realistic limitation on the exercise of the meaningful power retained by the settlor during virtually her entire lifetime.
 

 The argument concerning the Surrogate’s determination that the award of attorney’s fees was reasonable, as affirmed by the Appellate Division, is without merit. Thus, no discussion of that issue is warranted.
 

 Accordingly, the order of the Appellate Division should be modified, with costs payable out of the estate to all parties appearing separately and filing separate briefs, by reinstating
 
 *639
 
 the order of Surrogate’s Court, Onondaga County, in accordance with this opinion and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Simons, Titone, Smith, Levine and Ciparick concur.
 

 Order modified, etc.
 

 *
 

 Because Dorothy Reynolds died in 1989, the question of whether her trust is a testamentary substitute must be determined under EPTL 5-1.1. That statute has been replaced by EPTL 5-1.1-A for decedents dying on or after September 1, 1992
 
 (see,
 
 L 1992, ch 595,10;
 
 see also,
 
 Turano, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 5-1.1, 1996 Pocket Part, at 2).