In the Matter of the Estate of WILLIAM L. OESTRICH, Deceased. HELEN MAY OESTRICH, Appellant; CHRISTOPHER J. MORAN, as Guardian ad Litem of LAUREL McENANEY and Another, Respondent. STEPHANIE G. BECK, as Executor of WILLIAM L. OESTRICH, Deceased, Appellant. [877 NYS2d 754]—

Lahtinen, J. Appeals (1) from two orders of the Surrogate's Court of Broome County (Peckham, S.), entered July 31, 2008 and September 15, 2008, which, among other things, denied petitioner's application to cancel her surviving spouse election against decedent's will, and (2) from an order of said court, entered December 18, 2008, which denied a motion by the executor of decedent's estate for reconsideration.

Decedent executed a will in November 2004 in which he bequeathed his estate in equal shares to 13 beneficiaries, including petitioner (his spouse). He died in April 2006, his will was

admitted to probate in July 2006 and later that month petitioner filed a notice of election. In early March 2008, the executor of decedent's estate (an attorney) notified petitioner's attorney that, in preparing to close the estate, she had calculated that the testamentary substitutes received by petitioner—including the $223,434.28 value of one half of decedent's pension (see EPTL 5-1.1-A [b] [1] [G])—exceeded the value of petitioner's elective share and, thus, the executor inquired whether petitioner wished to withdraw her right of election.

On March 16, 2008, petitioner executed and forwarded to the executor a document purporting to withdraw her previously filed notice of election. In a letter dated March 19, 2008, the executor notified the 13 beneficiaries named in the will (including petitioner and the five trustees named in the will for the five infant beneficiaries) that, upon receipt of duly executed releases from all of them, she would then forward to each a one-thirteenth share.

By application dated April 2, 2008, petitioner commenced this proceeding seeking approval from Surrogate's Court of the cancellation of her prior election (see EPTL 5-1.1-A [c] [5]). Also in April 2008, the executor—having received all 13 executed release and receipt forms—distributed the estate assets to the 13 beneficiaries. On May 12, 2008, Surrogate's Court appointed respondent as the guardian ad litem for the five infant beneficiaries and later that month respondent filed objections to petitioner's application to withdraw her election. Petitioner moved for summary judgment dismissing respondent's objections and granting her application to withdraw her election. Surrogate's Court denied petitioner's application, finding that the 12 other beneficiaries would be prejudiced if the withdrawal of election was permitted since they would each lose about $2,113. The court directed petitioner to return her one-thirteenth share of $25,355, plus interest. The court further determined that the executor had made an improper distribution and the court assessed a conditional surcharge against her for the amount of the share paid to petitioner under the will. The executor's motion to reargue was denied. Petitioner and the executor appeal.[1]

Since 1929, New York has statutorily protected a spouse from being disinherited by providing for a right of election (see former Decedent Estate Law § 18, added by L 1929, ch 229, § 4; see generally Matter of Allan, 5 NY2d 333 [1959]). The statutes

---

1. The executor also filed a notice of appeal from the order denying reargument, but no appeal lies from such an order (see Ault v Richman, 299 AD2d 613, 615 [2002]).

governing that right have undergone occasional revision, with the most recent statute—and the one controlling here—enacted in 1992 (*see* L 1992, ch 595, § 10; *see also* L 1993, ch 515, § 3 [making several changes to the statute]). The overriding purpose of the right to elect is to protect the survival rights of a spouse (*see Matter of Reynolds*, 87 NY2d 633, 637 [1996]; *Matter of Agioritis*, 40 NY2d 646, 650-651 [1976]; *Matter of Niedelman*, 6 AD2d 291, 295 [1958], *affd* 5 NY2d 1043 [1959]), and it has been aptly observed that "[t]he common thread that runs through each and every change in the law is that the rights of the surviving spouse expanded with each modification" (*Matter of Solomon*, 163 Misc 2d 805, 808 [1994]). The interpretation and application of the statute must be made consistent with the purpose for which it was enacted (*see e.g. Matter of Yolanda D.*, 88 NY2d 790, 795 [1996]).

The decision to elect is not irrevocable. Even before the most recent statute was enacted, it was recognized that in some circumstances withdrawing an election would be permitted (*see Matter of Allan*, 5 NY2d at 343). The matter is now controlled by EPTL 5-1.1-A (c) (5), which accords discretion to Surrogate's Court in determining whether to permit withdrawal of the election so long as "no prejudice is shown to creditors of such spouse or other persons interested in the estate."

Here, creditors are not an issue. Surrogate's Court, however, determined that the 12 other beneficiaries would be prejudiced by petitioner's withdrawal of her election. Although allowing petitioner to withdraw her election will result in the share under the will of the remaining beneficiaries being one-thirteenth rather than one-twelfth, the net effect of such withdrawal is to put the beneficiaries in exactly the same position they were in under the terms of the will as intended by decedent. Significantly, there is no showing that any of the other 12 beneficiaries changed their position in any fashion in reliance upon the result of the election. Nothing of value had yet been advanced to any of the 12 beneficiaries before petitioner's withdrawal application and, hence, they will not be required to return any funds. Under such circumstances, we are unpersuaded that prejudice has been established.[2] Moreover, permitting petitioner to withdraw her election is consistent with the statutory intent of

---

2. While the term prejudice is not defined in the statute, we note that such term is often construed in civil cases to require an actual detriment that puts a party in a worse position than before the challenged act or omission, such as occurs as a result of a change of position made in reliance on the act, or an added expense or burden (*see generally Resk v City of New York*, 293 AD2d 661, 662 [2002], *lv denied* 99 NY2d 507 [2003]; *Busler v Corbett*, 259 AD2d 13, 16 [1999]; *Smith v Industrial Leasing Corp.*, 124 AD2d 413, 414 [1986]).

providing the fullest measure of protection to the spouse (*see e.g. Matter of Reynolds*, 87 NY2d at 637) as well as the general policy favoring carrying out the intent of the decedent (*see Matter of Jones*, 38 NY2d 189, 193 [1975]; *Matter of Maliszewski*, 42 AD3d 737, 738 [2007]). Upon our review of the record, we conclude that petitioner should have been permitted to withdraw her election.

The remaining arguments are either academic or unavailing. We note, however, that we agree with Surrogate's Court that the attorney/executor acted imprudently in disbursing funds on the apparent assumption that Surrogate's Court would rule a particular way on a pending petition, a factor that may be relevant in establishing fees or commissions.

Peters, J.P., Rose, Malone Jr. and Garry, JJ., concur. Ordered that the orders entered July 31, 2008 and September 15, 2008 are reversed, on the law and the facts, without costs, and petition to approve cancellation of the surviving spouse election granted.

Ordered that the appeal from the order entered December 18, 2008 is dismissed, without costs.