S. Samuel Di Falco, S.
The executors have brought this proceeding in order to determine the validity and effect of the election of Olga K. Gerard, the alleged widow of the decedent. The testator died on June 3, 1973 leaving a will dated January 11, 1973. His testamentary plan is expressed in his will and in an inter vivos trust created on May 24, 1968.
Effective on Mr. Gerard’s death, the trust agreement provides for the creation of five charitable remainder unitrusts, each having a 5% annual payout. One of such trusts is for the life of Mrs. Gerard and is to consist of 35% of Mr. Gerard’s net estate reduced by the value of all testamentary benefits to the widow.
A hearing was held on April 28, 1975 for the purpose of presenting evidence to the court as to Olga K. Gerard’s status *215 as surviving spouse and the anticipated income yield of the assets expected to be held in trust for the benefit of Olga K. Gerard.
The court must determine three basic issues:
(1) Does Olga Gerard have status as a widow to elect?
(2) If she does, is her election barred by the provisions of EPTL 5-1.1, and what effect if any does chapter 87 of the Laws of 1975, effective May 13, 1975, have on her election?
(3) If she is granted her right of election, what contributions from all interests involved must be made in order to satisfy her elective share?
At the hearing, without objection, the attorney for Mrs. Gerard offered into evidence his personal affidavit stating those facts known by him regarding the widow’s status. Attached to the affidavit as Exhibit A is a certificate of marriage registration issued in the Borough of Manhattan. The certificate verifies that the decedent Jacques A. Gerard was married to the respondent Olga Gerard on May 3, 1966. It further states that it was the groom’s second marriage, the first having terminated by death of the wife, and that it was the third marriage for the bride, her first two having terminated in divorce. In addition thereto, the court received into evidence copies of the divorce decrees terminating Olga Gerard’s prior marriages.
No other evidence was offered at the hearing with respect to the widow’s status.
Pursuant to subdivision 4 of section 14-a of the Domestic Relations Law: "A copy of the record of marriage registration when properly certified * * * shall be prima facie evidence of the facts therein stated”.
I find that the uncontroverted evidence offered at the hearing establishes Olga K. Gerard as the decedent’s widow.
The issue relating to the effectiveness of the widow’s election is more perplexing.
Section 664 of the Internal Revenue Code exempts a charitable remainder annuity trust and charitable remainder uni-trust from income tax. Paragraph (2) of subdivision (d) of said section defines a unitrust as one from which a fixed percentage (which is not less than 5%) of the net fair market value of its assets, valued annually, is to be paid to one or more persons not less often than annually. Section 2055 (subd [e], par [2]) of the Internal Revenue Code effected by the 1969 *216 amendments to the code provides an additional benefit when establishing a charitable remainder annuity trust or charitable remainder unitrust by permitting an estate tax deduction.
The dilemma, as pointed out by counsel for the New York Heart Association and respondent Michael A. Gerard, is that while a trust may qualify for a charitable deduction under the 1969 Tax Reform Act, it may not satisfy the widow’s right of election under EPTL 5-1.1.
EPTL 5-1.1 (subd [c], par [1], cl [D]) provides that a trust for a surviving spouse having a corpus equal to or greater than the elective share, with income therefrom payable to the surviving spouse for life, satisfies the elective share. The substance of EPTL 5-1.1 (subd [c], par [1], cl [J]) is a carryover of section 18-b (subd 1, par j) of the Decedent Estate Law enacted in 1965 which allowed an absolute right of election whenever the trust instrument permitted:
(i) the reduction of any such trust by invasion of principal in favor of someone other than the surviving spouse;
(ii) the termination of the trust before the death of surviving spouse;
(iii) the trustee to apply less than all the net income for the benefit of the surviving spouse.
Section 18-b (subd 1, par j) of the Decedent Estate Law is a codification of prior case law wherein the widow was permitted to maintain her right of election where the trust contained any of the preceding directions. (See Matter of Byrnes, 260 NY 465; Matter of Matthews, 255 App Div 80; Matter of Sernau, 36 Misc 2d 348.) In revising section 18, it was the purpose of the Legislature to give practical effect to the rights of a surviving spouse in the property of the deceased, and at that time the statute was construed in the best interest of the surviving spouse (Matter of Aaronson, 20 AD2d 133).
However, shortly thereafter the Legislature revised section 18-b of the Decedent Estate Law by enacting EPTL 5-1.1 (subd [c], par [1], cl [J], sub cl [iii]) which entitles the surviving spouse to an elective share only when the trustee is authorized to pay or apply to such spouse less than substantially all of the net income from such trust. (L 1966, ch 952.) The enactment of this amendment was made in reaction to cases in which the surviving spouse received an absolute right of election for relatively minor invasions of the trust income. (Fifth Report of *217 Temporary State Comm on Modernization, Revision and Simplification of Law of Estates, March 31, 1966, p 50.)
In Matter of Brettschneider (30 AD2d 59) a statutory trust was created for the widow in an amount equivalent to her intestate share. Upon termination of the trust, the trustees were directed to pay over the then principal and any unpaid income to the testator’s children. Surrogate McGrath held that the fact that the remaindermen have a right to unpaid income is only a minor deviation from the right of election statutes and therefore the surviving spouse is not entitled to an absolute right of election. (Matter of Baileson, 16 NY2d 757; other citations omitted.) In Matter of Best (62 Misc 2d 535, 536), the testator died in 1968 and pursuant to his will dated August 14, 1964, he left his residuary estate in trust for the widow, with direction to his trustees to apply so much of income and principal for support and welfare of the widow "as in their discretion they may deem proper”. The court noted that where trustees are directed to pay principal charges out of income or pay part of the income to another or pay a stated sum which may or may not equal the net income, courts have held that the surviving spouse has an absolute right of election. Where the powers of the trustees are not mandatory or directive but discretionary, courts have exercised their power of supervision over the trust so as to guarantee a widow all of the net income of the trust.
During the 1975 session, the Legislature of this State enacted chapter 87 in an attempt to bring the New York right of election statute within the provisions of the 1969 Tax Reform Act as it pertains to charitable remainder trusts.
Chapter 87, as reported in McKinney’s Session Laws of New York, reads as follows:
"Section 1. Subparagraph (I) of paragraph one of subdivision (c) of section 5-1.1 of the estates, powers and trusts law, as amended by chapter six hundred eighty-six of the laws of nineteen hundred sixty-seven, is hereby amended to read as follows:
"(1) The provisions of this paragraph with respect to trusts for the life of the surviving spouse also apply to a legal life estate, to an annuity for the life of the surviving spouse, to an annuity trust and a unitrust as provided in subparagraph (K) of paragraph one of this subdivision or to any other testamentary provision by which income is payable for the life of the surviving spouse. In computing the value of the testamentary *218 provisions the capital value of the fund or other property producing the income shall be taken and not the value of the life estate.
"§ 2. Paragraph one of subdivision (c) of section 5-1.1 of such law is hereby amended by adding thereto a new subparagraph, to be subparagraph (K), to read as follows:
"(K) If any testamentary provision for the surviving spouse provides that such spouse shall receive, for life and not less often than annually, from a charitable remainder annuity trust, as defined in paragraph one of subdivision (d) of section six hundred sixty-four of the United States Internal Revenue Code, a sum certain (which is not less than five percent of the initial net fair market value of all property placed in such trust) or from a charitable remainder unitrust, as defined in paragraph two of subdivision (d) of section six hundred sixty-four of such code, a fixed percentage (which is not less than five percent) of the net fair market value of its assets, valued annually, such testamentary provisions shall satisfy the provisions of this paragraph with respect to trusts with income payable to the surviving spouse for life.
"§ 3. This act shall take effect immediately.” The effective date of the statute is May 13, 1975.
During the life of the parties, marital rights have always been treated as inchoate or contingent (Gleason v Gleason, 26 NY2d 28). These rights stand upon the same footing as rights of descent and distribution which do not vest until the death of the decedent. Since such rights are created by the law of the State, the State may change the law before the rights vest upon death but may not do so after death. (Matter of Hegarty, NYLJ, Aug. 14, 1975, p 7, col 2.)
John J. Hegarty died on July 25, 1974. His will bequeathed to his widow a charitable remainder unitrust. Six percent of the net fair market value of the trust principal was to be paid annually to the widow with excess income to be added to trust principal. Upon her death the trust is to be distributed among various charities. In the Hegarty decision (supra) Surrogate Midonick held that in order for the trust to meet the requirements of EPTL 5-1.1 as it existed at the date of the decedent’s death, the trust must pay all of the income to the surviving spouse. The widow was entitled to the capital value of the trust not in excess of her elective share and all of the income.
Jacques A. Gerard died on June 3, 1973; his widow became vested with her right of election at that time. EPTL 5-1.1 as it *219 existed then dictates that "substantially all” of the income is to be paid to Gerard’s widow.
At the hearing evidence was accepted which attempts to establish the income yield for the trust, based on statistics compiled by the trustee. Conflicting statistics have likewise been offered into evidence by counsel for the widow. In addition thereto Mr. John Adamiak, second vice-president of the Chase Manhattan Bank, was placed on the witness stand. As a trust officer responsible for the management of investments and securities in the Gerard estate, Mr. Adamiak testified that theoretically there could be a different yield on every single date. Under examination by counsel for the widow, Mr. Adamiak testified as follows:
"Q. You mentioned that, in structuring the investment portfolio for the trust that would be created for Mrs. Gerard, if the election was denied you would try to achieve a yield of five per cent, because, I assume, that is all you have to achieve in order to meet the income requirements of this trust?
"A. No, not that reason. It is just that market values even at the present time are historically low, and it is quite possible that we can have much higher prices for stocks in the future, and that would result in lower yields.
"Q. But the date you make the purchase really determines the yield.
"A. Not for this purpose, no, because the five percent distributions placed on it involve annual valuation.
"Q. You certainly could structure the portfolio if you wanted the yield to be higher than five per cent?
"A. Yes, you can structure it in many different ways. But if you want to take into account the interests of any will’s income beneficiaries, you have to draw a balance between the income-oriented securities and those that are expected to show growth increased value in the assets, over time.
"Q. Can you tell me, from any calculations that you have done, what the yield would be on the trust in one year from now?
"A. No.
"Q. How about ten years from now?
"A. It would be just a guess.
"Q. A guess?
"A. Yes.
*220 "Q. You can never be certain?
"A. No. It depends on market levels, price levels, and dividend receipts at those times.
"Q. Which could be either high or low, but no one really knows?
"A. That is right.”
From the evidence presented and the testimony given at the hearing, this court cannot unequivocally say that the 5% payout in the trust instrument will in fact take into account all of the income or at least substantially all of the income generated by the trust.
Using similar reasoning as in Matter of Schmidt (171 Misc 95), it is the court’s opinion that the provision for the surviving spouse must be ascertainable from the language of the will itself (or trust instrument, as in this case) and not left to speculation as to the income yield.
Under these circumstances, it is the court’s opinion that the widow is entitled to an absolute right of election as prescribed by EPTL 5-1.1 (subd [c], par [1], cl [J], sub cl [iii]).
It has been suggested that the Legislature, by enacting chapter 87, believes that a widow beneficiary of a 5% unitrust is protected in the same way as a widow who receives substantially all of the net income, and therefore the widow’s election should be barred in this case. This argument is rejected by the court because it asks the Surrogate to apply the effect of chapter 87 retroactively while it is quite evident by now that the provisions apply only prospectively.
Moreover, the most obvious reason for the Legislature enacting chapter 87 was as stated earlier, to bring the New York right of election statute within the provisions of the 1969 Tax Reform Act.
The final issue remaining relates to the contributions to be made to the widow’s elective share.
Attention is directed to EPTL 5-1.1 (subd [d], par [2]) which codifies the judicial rule that all beneficiaries under the will must contribute ratably to the election share of the surviving spouse. (Practice Commentaries in McKinney’s Cons Laws of NY, Book 178, EPTL 5-1.1.)
The theory of ratable contribution is best explained in Matter of Rosenzweig (19 NY2d 92).
*221 The exact calculation of the elective share is to be determined in the accounting proceeding.