OPINION OF THE COURT
Fuchsberg, J.
This appeal is taken from an order of the Appellate Division, Second Department, which affirmed two decrees of the Surrogate’s Court, Nassau County. In one proceeding, the principal question, apparently of first impression in our appellate courts, calls for the determination of whether a buy-sell provision of a corporate stockholders’ agreement to which the decedent was a party can be a testamentary substitute includable in evaluating the estate against which his surviving spouse may exercise her statutory right of election (EPTL 5-1.1). To test the right of the widow, who was the decedent’s second wife, to raise the testamentary substitute issue, the other proceeding with which we here are concerned litigates a claim that she forfeited her right to elect by unjustifiably abandoning her husband during his lifetime (EPTL 5-1.2).
*137 In his will, executed in 1967, the decedent, Sid Riefberg, named his former wife, Henrietta Riefberg, executrix and, save for a $500 bequest to his daughter by the second wife, Maria Riefberg, left his entire estate to Henrietta and her four adult children. Since the will made no provision for Maria, she filed a spousal election, which Henrietta, as executrix, challenged, as relevant on this appeal, on the theory that Maria had constructively abandoned the decedent. However, the Surrogate, noting that, while the executrix produced proof that a time had come when Maria requested that the locks on their marital apartment be changed and that the decedent be excluded therefrom, and that, at the time of his death, the couple still was residing apart, concluded that this evidence, standing alone, was insufficient to establish the estate’s theory. So he decreed, on the merits, that Maria, as surviving spouse, was entitled to elect.
Armed with this decree, Maria then instituted the proceeding aimed at a determination that the interest to be disposed of by the shareholders’ agreement is an integral part of the estate on which her elective share is to be computed.
Decedent and his brother, each the owner of one half of its shares, were the only stockholders of the close corporation to which the agreement pertained. For a long time, this buy-sell arrangement obligated the corporation to purchase the shares of a deceased stockholder from his personal representative, the proceeds thus becoming eátate assets. However, within 24 hours before decedent’s death, which followed his hospitalization for a terminal illness, he and his brother executed a hand-written “Amendment of Stockholders’ Agreement”, which provided for direct payment of the entire value of the decedent’s shares directly to Henrietta, her four children and another individual.
After a hearing, finding as a matter of fact and law that the disposition thus made constituted a testamentary substitute within the compass of EPTL 5-1.1 (subd [b], par [1], cl [E]) and, as such, did not place it beyond the reach of Maria’s election, the Surrogate again ruled in her favor (107 Misc 2d 5). The ensuing decree therefore directed the executrix to file an accounting in which the avails of the *138 stock would enter into the calculation of her statutory share.
 On appeal, a unanimous Appellate Division has since affirmed both decrees, without opinion. For the reasons which follow, we now uphold its determination.
In our own analysis, the threshold issue of abandonment poses no particular problem. It is axiomatic that, to challenge a spouse’s right of election on this account, more must be shown than a mere departure from the marital abode and a consequent living separate and apart (e.g., Matter of Maiden, 284 NY 429; Matter of Rose, 15 AD2d 983). Sensitive to the reality that marital partnerships; no matter how knowingly entered upon “for better or for worse”, still run the range of conflicts common to all human relationships, the law has long required that one who seeks to impose such a forfeiture must, in addition, establish, as in an action for separation, that the abandonment was unjustified and without the consent of the other spouse (Matter of Maiden, supra, at pp 432-433; see Schine v Schine, 31 NY2d 113, 119).
True, as the estate here argues, given the handicap presented by the absence of the testator, it may be very difficult to carry this burden (see Matter of Lamos, 63 Misc 2d 840, 843-844 [Sobel, S.]), though, because of the strictures of the “Dead Man’s Statute” (CPLR 4519), the surviving spouse too is, to say the least, hardly unimpeded in his or her presentation (id., at p 843; see Matter of Fishman, 32 AD2d 1063, affd 27 NY2d 809). In the face of these evidentiary barriers, which need not be lost on the trier of the facts (cf. Noseworthy v City of New York, 298 NY 76), it is hardly surprising that, in this context, almost always “[t]he question of abandonment is one of fact, and often a close one” (9A Rohan, NY Civ Prac, EPTL, par 5-1.2[6], pp 5-230 — 5-231).
In the present case, the Surrogate’s findings having been affirmed by the Appellate Division, we could disturb the one on justification only were we to conclude that there was no evidence or inferences therefrom to support it (Laufer v Ostrow, 55 NY2d 305, 311-312; Matter of MacDonald, 40 NY2d 995). On this record, we are unable to do so.
*139 Maria’s status established, we now focus on whether the shareholders’ agreement indeed is a testamentary substitute. The answer ultimately must rest on our interpretation of EPTL 5-1.1 (subd [b], par [1], cl [E]), which defines the category of testamentary substitutes in which the courts below placed it as “[a]ny disposition of property made by the decedent * * * in trust or otherwise, to the extent that the decedent at the date of his death retained, either alone or in conjunction with another person, by the express provisions of the disposing instrument, a power to revoke such disposition or a power to consume, invade or dispose of the principal thereof”.
Since the statute is the product of legislative efforts to reshape principles which theretofore had prevailed in the law regulating descent and distribution, an historical survey will illumine its intention. This may well begin with the reform recommended by the Foley Commission when, in 1928, it proposed the abolition of dower and curtesy, which, in the common-law tradition, not only tended to restrict the free alienation of property, but also limited the rights of surviving spouses (see Combined Reports of Commission to Investigate Defects in the Laws of Estate, NY Legis Doc, 1928, No. 70, p 18). To this the Legislature was to respond by substituting — for the first time in New York — a spousal right of election (L 1929, ch 229, eff Sept. 1, 1930).
But, the new legislative scheme, in actual operation, fell short of its objective. For the removal of the restraints formerly imposed by dower and curtesy made it possible to circumvent the newly afforded spousal right by gratuitous inter vivos transfer (Amend, Surviving Spouse and the Estates, Powers and Trusts Law, 33 Bklyn L Rev 530, 531-532), a development which, interestingly enough, was not completely unenvisioned by the commission itself (see NY Legis Doc, 1928, No. 70, pp 18, 171, citing Barry, Modernizing the Law of Decedents’ Estates, 16 Va L Rev 107, 109; see, also, Note, Proposed Changes in the New York Law of Estates, 28 Col L Rev 1088, 1094).
In an attempt to right the balance, courts then developed a decisional response, attuned to the ill-defined doctrine labeled the “illusory transfer”, to deal with legal attacks on *140 the bona fides of transactions adverse to surviving spouses (9A Rohan, op. cit., par 5-l.l[6][c]). However, the consequent state of flux (see Matter of Agioritis, 40 NY2d 646, 648-649; compare Matter of Crystal, 39 NY2d 934, with id., at pp 936-940 [dissenting opn]) led the Legislature, in authorizing the creation of what came to be known as the Bennett Commission, to charge it, among other things, with the formulation of legislation to close the gap (Matter of Agioritis, 40 NY2d, supra, at p 649). The efforts culminated in sweeping changes affecting testamentary substitutes (Third Report of Temp Comm on Modernization, Revision and Simplification of the Law of Estates, Report No. 1.5c, NY Legis Doc, 1964, No. 19, pp 122-141).
The Bennett Commission’s reports are instructive. They tell us that it considered the subject of stock purchase agreements and, analogizing them to trusts in which decedents retain a life interest, concluded that these should be regarded as testamentary substitutes (Third Report, NY Legis Doc, 1964, No. 19, p 129, nn 96, 97). To this end, it initially framed a proposed statute, which, modeled after one in Pennsylvania (id., p 141) (the Pennsylvania statute thereafter was to be construed as authorizing a right of election against such agreements [Matter of Burk, 37 Pa D & C2d 528]), comprehensively spoke, as indicated above, of any disposition “in trust or otherwise” (emphasis supplied).
But, while the matter was still in legislative committee, interested parties advanced proposals that the contemplated statutory definition of testamentary substitute be confined by excluding specified rights accruing upon a testator’s death. These efforts brought about an addition, in the form of an exclusionary clause, now EPTL 5-1.1 (subd [b], par [2]). As the commission’s reports expressly go on to point out, while paragraph (2) thus excluded “pension plans”, “insurance proceeds”, “profit-sharing plans”, “stock options”, “stock bonuses”, and “deferred compensation plans”, it is telling that, in stark contrast to this enumeration of exceptions to paragraph (1), none was made for stockholders’ agreements (Fourth Report of Temp Comm on Modernization, Revision and Simplification of the Law of Estates, NY Legis Doc, 1965, No. 19, pp 148-150). *141 Instead, other than as restricted by paragraph (2), paragraph (1) was unchanged.
Nevertheless, Henrietta, as the executrix, urges us to construe the statute even more narrowly. To support this position, in the main, she essays a twofold approach. Invoking the ejusdem generis rule of construction, she would have us read the statutory phrase “in trust or otherwise” as limiting its application to transactions “trust-like” in nature. Moreover, she would have us subscribe to a particular commentator’s theory that shareholder agreements should not be classified as testamentary substitutes since “[a]ny contract can be abrogated by mutual consent” (Rohan, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 5-1.1, pp 41-42). These arguments are unpersuasive.
The answer to the first of these contentions is that, while the ejusdem generis rule, by which a series of specific words describing things or concepts of a particular sort are used to explain the meaning of a general one in the same series (see People v Illardo, 48 NY2d 408, 416) frequently is resorted to as an interpretative rule, it is rare that a single word, though illustrative of a particular genus or idea will reliably reveal the intent behind a general one (Alexander v Tredegar Iron & Steel Co. [1945] AC 286, 297 [L. Wright]; London County Council v Tann [1954], 1 WLR 371, 1 All Eng L Rep 389). The employment of the word “otherwise” in “trust or otherwise” therefore is better taken literally to mean “different from” a trust (Webster’s New International Dictionary [2d ed], p 1729), a definition which, not surprisingly, dovetails with the Legislature’s “evident purpose” (McKinney’s Cons, Laws of NY, Book 1, Statutes, § 239, p 409; 2A Sutherland, Statutory Construction [Sands, 4th ed], § 47.22, p 18; cf. Matter of Kleefeld, 55 NY2d 253, 259-260).
Nor, in this context, can shareholders’ agreements be brushed off by likening them to the abrogation of “any contract”. For one thing, the agreement here was the means by which the decedent not only controlled the beneficial enjoyment of the property right at stake, but stripped the estate of assets which should have been subject to his surviving spouse’s right to her elective share. Indeed, its *142 “express provisions” enabled the decedent, in terms of an appropriate use of ejusdem generis, to retain a power to “revoke”, “consume”, “invade”, or otherwise “dispose” of the corpus. Thus, the agreement itself, by expressly providing for the manner of its termination, fell squarely within the express statutory definition of the category of testamentary substitute which here has been our concern (EPTL 5-1.1, subd [b], par [1], cl [E]).
Accordingly, the order of the Appellate Division should be affirmed, with costs payable out of the estate to all parties appearing separately and filing separate briefs.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer and Simons concur.
Order affirmed, etc.