In the Matter of the Estate of RICHARD A. DEVITA, Deceased. DELORES D. DEVITA, Respondent; RICHARD A. DEVITA, JR., et al., Appellants.

Second Department, September 26, 1988

APPEARANCES OF COUNSEL

*Farrell, Fritz, Caemmerrer, Cleary, Barnosky & Armentano, P. C. (John J. Barnosky* and *John R. Morken* of counsel), for appellants.

*Liebowitz & Peterson (R. Bertil Peterson* and *George Parker Lynch* of counsel), for respondent.

**OPINION OF THE COURT**

THOMPSON, J.

The principal issue presented on this appeal, appar-

ently one of first impression, requires us to determine whether a so-called "Spreadout Plan" (hereinafter the plan) involving the payment of future commissions of a life insurance agent, is a testamentary substitute against which his surviving spouse may exercise her statutory right of election. We find that the Surrogate properly considered the plan to be a testamentary substitute within the meaning of EPTL 5-1.1 (b) (1) (E) and properly included it in the decedent's estate. We further concur in the Surrogate's holding that the subject asset does not fall within any of the exclusions from classification as a testamentary substitute.

The petitioner, the second wife of the decedent Richard A. DeVita, Sr., initiated a proceeding in the Surrogate's Court, Nassau County, to obtain a determination as to the validity and effect of her election under EPTL 5-1.1 to take a share of her husband's estate. The petitioner married the decedent in 1976. At the time of his death, the decedent and the petitioner were engaged in a bitter matrimonial action which had been initiated by the petitioner in August 1983. The decedent, a district agent of the Northwestern Mutual Life Insurance Company (hereinafter Northwestern), died intestate on January 25, 1984, survived by the appellants, his two adult sons from a prior marriage, and by the petitioner, his spouse.

After the petitioner obtained letters of administration, she executed and filed a notice of intention to take her elective share of the estate. Insofar as relevant to this appeal, the petitioner contended that certain future margins and commissions, valued at approximately $213,211 and made payable after the decedent's death to his two sons as named beneficiaries, constituted a testamentary substitute, and, as such, were within the estate subject to the petitioner's election.

The decedent had entered into a contract with his long-term employer Northwestern, effective October 1, 1972, which provided, *inter alia,* for the payment of future insurance commissions upon his death, incapacity or retirement. Pursuant to the terms of the contract, the decedent, on or about April 21, 1982, elected to be covered by the plan. The plan pertained to the payment of first-year and renewal commissions and margins on previously written business. In a bulletin published by Northwestern, the plan is described as an optional payment alternative designed to level out an agent's future commissions following termination of his service with the company due to his death, disability or retirement. Upon an agent's election, his future commissions would be paid to him or to his

designated beneficiary over a period of 20 years in level monthly installments rather than being paid erratically and in diminishing amounts over a period of 10 years. Subsequent to the commencement of the matrimonial action, the decedent designated his sons as beneficiaries under the plan in the place of the petitioner.

Under the terms of the plan the agent's election could be revoked or its payment provisions changed until such time as the spreadout provisions became operative, i.e., upon termination of the agent's full-time service with the company. The decedent's contract with Northwestern provided that future commissions as they accrued would be credited to an account with the company as part of its general assets. The agent possessed no interest in this account which would be carried as an indebtedness of the company payable in accordance with the terms of the plan. While the agent had no power to assign the monthly spreadout payments, he retained the power to designate, revoke or change beneficiaries, and if at the date of the agent's death no beneficiary was designated, the monthly spreadout payments would be made to the agent's executor or administrator.

The petitioner submits that the plan constituted a testamentary substitute in that the decedent retained a life interest in the future commissions and as incidents thereof had the power to revoke the disposition and dispose of the principal. She contends that the plan does not fit within any of the exclusions from testamentary substitute classification contained in EPTL 5-1.1 (b) (2).

The appellants counter that the designation of beneficiaries under the plan does not constitute a disposition within the meaning of the EPTL 5-1.1 nor did the decedent have the power to invade or consume the principal; therefore, the plan was not a testamentary substitute. The appellants characterize the plan as being in the nature of a deferred compensation, death benefit or retirement plan and, as such, within the ambit of EPTL 5-1.1 (b) (2) which provides certain enumerated exceptions to testamentary substitute classification.

The Surrogate, while not expressly adopting the appellants' characterization of the plan as a deferred compensation plan, impliedly found it to be in the nature of deferred compensation. However, the Surrogate found the omission of deferred compensation plans from the list of exclusions from classification as testamentary substitutes contained in the EPTL to be

deliberate *(Matter of Devita,* 132 Misc 2d 185, 188). Conse-
quently, the Surrogate further held that, if it otherwise met
the criteria of a testamentary substitute, the plan should be
included within the decedent's estate and be made subject to
the surviving spouse's right of election. The Surrogate con-
cluded that the plan imbued the decedent with the power not
only to change beneficiaries but to consume the principal as
payments were made. Those attributes compelled the Surro-
gate to find that the plan fell squarely within the statutory
definition of a testamentary substitute. For the reasons which
follow, we uphold the Surrogate's determination.

EPTL 5-1.1 (b) (1) sets forth five categories of inter vivos
dispositions to be treated as testamentary substitutes for the
purpose of election by a surviving spouse. The Surrogate's
Court placed the spreadout plan within the broad confines of
EPTL 5-1.1 (b) (1) (E) which provides that the following is a
testamentary substitute subject to the surviving spouse's right
of election: "Any disposition of property * * * in trust or
otherwise, to the extent that the decedent at the date of his
death retained, either alone or in conjunction with another
person, by the express provisions of the disposing instrument,
a power to revoke such disposition or a power to consume,
invade or dispose of the principal thereof".

EPTL 5-1.1 (b) (2) also lists certain exclusions from classifi-
cation as testamentary substitutes. The provision germane to
our present inquiry excludes "payment in money, securities or
other property under a thrift, savings, pension, retirement,
death benefit, stock bonus or profit-sharing plan, system or
trust" (EPTL 5-1.1 [b] [2] [A]). We focus our analysis initially
on the exclusionary clause, since if the plan fell within an
exemption, that finding would preclude further inquiry. In
interpreting EPTL 5-1.1, the courts have held that the statute
is remedial and in enacting this provision the Legislature
intended to favor a construction which would expand and
protect the rights of a surviving spouse *(see, Matter of Agiori-
tis,* 40 NY2d 646, 650-651; *Matter of Fabell,* 121 Misc 2d 176,
183).

■ The argument advanced by the appellants is that the
plan is the equivalent of a deferred compensation plan or in
the nature of a retirement or death benefit plan, all of which
they claim are within the enumerated exclusions. Assuming
for the moment that the plan is in the nature of deferred
compensation, we find persuasive the Surrogate's analysis that
the omission of deferred compensation plans from EPTL 5-1.1

(b) (2) was not an oversight. The Surrogate referred to the reports of the Temporary Commission on Modernization, Revision and Simplification of the Law of Estates (known as the Bennett Commission) which was created by the Legislature in an effort to effect remedial legislation to offer more adequate protection to a surviving spouse from gratuitous inter vivos transfers of property which rightfully belong in the estate of the deceased spouse (see, Matter of Riefberg, 58 NY2d 134, 140). EPTL 5-1.1 is derived in large measure from the Bennett Commission's reports. In its review of the legislative history, the Riefberg court noted that the Bennett Commission initially included deferred compensation plans within the enumerated exclusions from testamentary substitute classification (Matter of Riefberg, supra, at 140, citing Fourth Report of Temp Commn on Modernization, Revision and Simplification of the Law of Estates, 1965 NY Legis Doc No. 19, at 148-150). We subscribe to the opinion of the Surrogate that the failure to specifically list deferred compensation plans in the enumeration of exclusions was intentional. The statute should not be broadened beyond its actual terms. It is telling, in this respect, that although the inclusion of deferred compensation plans was considered, no mention is made thereof in EPTL 5-1.1 (b) (2), whereas that provision mentions exclusions not listed in the Bennett Commission's recommendations, to wit, thrift and savings plans, systems or trusts.

Our conclusion is in accordance with fundamental principles of statutory construction, namely, "The Legislature is presumed to mean what it says, and if there is no ambiguity in the act, it is generally construed according to its plain terms. The court is obliged to construe statutory language literally where it expresses the evident intent of the Legislature, and the court cannot disregard the plain words of a statute even in favor of what may be termed an equitable construction, in order to extend it to some supposed policy not included in the act. A statute should not be extended by construction beyond its express terms or reasonable implications of its language" (McKinney's Cons Laws of NY, Book 1, Statutes § 94). Moreover, a construction which does not include deferred compensation plans within the exclusions would further the policy of providing the rights of the surviving spouse the broadest possible protection. Therefore, we reject the appellants' contention advocating a different construction of EPTL 5-1.1 (b) (2).

■ Briefly, were this court to find that deferred compensa-

tion plans fall within the exclusions from testamentary substitute classification, the appellants' position would be no more persuasive. The plan at issue, while perhaps loosely resembling a deferred compensation plan, does not bear the typical earmarks of such a plan. Typically, a deferred compensation plan involves compensation arrangements in which taxable income is not recognized at the time when the income is earned but rather when the funds are distributed to the employee *(see, generally,* Black's Law Dictionary 379 [5th ed 1979]). In contrast to deferred compensation plans, a spread-out plan is a manner of leveling the distribution of commissions which may not have yet been earned and involves an estimation of the value of future commissions. While tax benefits may accrue as a consequence of participation in a spreadout plan, its key feature is not the deferral of income for tax purposes.

The appellants' effort to characterize the plan as a retirement or death benefit plan is similarly unavailing. The plan contemplates payments during the agent's life triggered by the termination of full-time employment. While the contingencies of death and retirement are covered by the plan's terms, the spreadout plan is far broader than simply a death benefit or retirement plan. Indeed, Northwestern maintains fairly elaborate pension and retirement systems for the benefit of its employees quite apart from the plan. The Surrogate awarded the proceeds of the company's retirement and pension plans maintained on behalf of the decedent to the appellants as named beneficiaries thereof together with four life insurance policies made payable to the appellants. The petitioner does not challenge any of those awards.

As held by the Surrogate, the plan's failure to qualify as a death benefit distinguishes the case before us from the case of *Estate of Hildebrand* (NYLJ, May 6, 1983, at 18, col 1) upon which the appellants substantially rely. The objections registered therein concerned the designation of a wage continuation plan and a deferred compensation agreement as testamentary substitutes. The court found as to the deferred compensation plan that its classification as a testamentary substitute was erroneous. In reaching this conclusion, the court determined that although the deferred compensation plan therein was not the classic kind of death benefit, it could be considered in the nature of a "fringe" death benefit so as to be encompassed within the statutory exclusions from testamentary substitutes. The basis of its reasoning may be found in

the fact that the decedent surrendered certain compensation to the company's investment fund and retained virtually no control over the asset other than the ability to appoint a designated beneficiary to receive payments from the fund in the event of death.

The final question for our determination concerns whether the plan may be considered a testamentary substitute within the meaning of EPTL 5-1.1 (b) (1) (E). The petitioner relies upon the authority of *Matter of Riefberg* (58 NY2d 134, *supra)* concerning a buy-sell shareholders' agreement which obligated the corporation to purchase the shares of a shareholder upon the shareholder's death. The proceeds therefrom would become part of the deceased shareholder's estate. The decedent and his brother were the only stockholders of the close corporation to which the agreement pertained. Within 24 hours prior to his death the decedent and his brother amended the agreement to provide for payment of the value of the decedent's shares directly to his first wife and her four children. The decedent's second wife challenged the agreement as a testamentary substitute includable in determining the size of the decedent's estate against which she could exercise her right of election. The court construed the decedent's ability to alter the terms of the shareholders' agreement to be equivalent to the retention of the power to revoke, consume, or otherwise dispose of the corpus. The buy-sell agreement was treated as the equivalent of a revocable trust "by which the decedent not only controlled the beneficial enjoyment of the property right at stake, but stripped the estate of assets which should have been subject to his surviving spouse's right to her elective share" *(Matter of Riefberg, supra,* at 141).

The plan at bar bears a close resemblance to the agreement at issue in *Riefberg (supra).* The decedent was possessed of the power to revoke his participation in the plan before it became operative. Moreover, the decedent had the authority to designate or revoke the designation of beneficiaries or to withhold the designation, the effect of which was to permit him to divert assets from his estate to a named beneficiary or conversely to place such future commissions within his estate. Thus, the decedent retained the power to dispose of the proceeds of the plan by the simple expedient of revoking his election to participate therein or by choosing to designate a beneficiary, changing that designation or refusing to make a designation of a beneficiary. The decedent's power to revoke the election to participate in the plan also indicated that he

retained the power to dispose of the property within the meaning of EPTL 5-1.1 (b) (1) (E).

The other incident of a testamentary substitute within the meaning of EPTL 5-1.1 (b) (1) (E), namely, the power to consume the principal, is also demonstrated by the terms of the plan. While the decedent was not explicitly authorized to consume the principal, the features of the plan as described in the Northwestern bulletin implies a power to consume the principal by providing for the payment of commissions from the company account to the district agent during his lifetime.

Thus, the plan was properly considered by the Surrogate to constitute a testamentary substitute and its inclusion in decedent's estate subject to the petitioner's right of election is appropriate. Accordingly, the order of the Surrogate should be affirmed.

MANGANO, J. P., BROWN and SULLIVAN, JJ., concur.

Ordered that the order is affirmed, with costs payable by the appellants personally.