Stein, J.
Respondent and decedent were married in August 1974. When decedent died intestate in March 2008, he and respondent had been living separately for approximately 10 years. Following the issuance of letters of administration to respondent, petitioner— decedent’s sister — commenced this proceeding to disqualify respondent as a surviving spouse and to remove her as administrator on the ground that she had abandoned decedent (see SCPA 711; EPTL 5-1.2 [a] [5]). After substantial discovery, respondent moved for summary judgment dismissing the petition and petitioner cross-moved for summary judgment in her favor. Surrogate’s Court granted respondent’s motion, denied petitioner’s cross motion and dismissed the petition. Petitioner appeals. For the reasons that follow, we now modify.
A person may be disqualified from inheriting from his or her deceased spouse where the surviving “spouse abandoned the deceased spouse, and such abandonment continued until the time of death” (EPTL 5-1.2 [a] [5]). The party asserting abandonment bears the burden of establishing that the surviving spouse departed from the marital abode and that such departure was both “unjustified and without the consent of the other spouse” (Matter of Riefberg, 58 NY2d 134, 138 [1983]; see Matter of Morris, 69 AD3d 635, 636 [2010]; Matter of Arrathoon, 49 AD3d 325, 325 [2008]; Matter of Mancuso, 281 AD2d 874, 874 [2001]; Matter of Baldo, 210 AD2d 848, 849-850 [1994]). In determining whether one spouse has abandoned the other, a court employs the same standards as are applied in the context of an action for a separation or divorce based on abandonment (see Matter of Ruff, 91 AD2d 814 [1982]).
In support of her motion, respondent relied upon, among other things, her deposition testimony and affidavit. Such evidence established that she and decedent resided together for some time following their marriage, during which decedent drank heavily and abused her, physically and mentally, occasionally requiring police intervention. These allegations were substantiated by the testimony of respondent’s daughter, who lived with respondent and decedent for a period of time during their marriage. Respondent testified that decedent would leave their home for periods of time and that she ultimately sug *920 gested that he live at his vacation home.[1] Respondent and decedent subsequently lived together only on weekends until 1998, when they no longer resided together at all. After that time, they mostly communicated by telephone every couple of months and saw each other occasionally, up until several months before decedent’s death. Although respondent acknowledged that she had two affairs during the marriage, she claimed that decedent knew about the affairs and was not angry about them, suggesting that he consented thereto. This evidence was sufficient to meet respondent’s threshold burden on her summary judgment motion — to establish that she did not abandon decedent, that she lived apart from him with his consent and that her absence was justified by his drinking and his related abusive behavior — thus shifting the burden to petitioner to raise a question of fact (see Matter of Baldo, 210 AD2d at 850).
In our view, petitioner met that burden here. Petitioner’s testimony, as well as the testimony of two of decedent’s friends and two of her nephews, called into question respondent’s allegations that decedent had an alcohol problem and that he was abusive. Respondent conceded that she never pursued criminal charges, initiated a family offense proceeding or otherwise sought an order of protection against decedent as a result of the alleged abuse. Petitioner further testified that she knew, based upon conversations with decedent[2] and her observations of his emotional distress, that he “want[ed] to be with [respondent]” and would not have consented to her living apart from him. There was also testimony that decedent was sensitive about the topic of his marriage and did not like to discuss it. Respondent even testified that decedent had asked her to return to him, although she claimed that she refused to do so because of his alcohol abuse. Additionally, the record contains cards that were given to respondent by decedent in which he expressed his love for her. Based upon this evidence, one could reasonably infer that decedent did not consent to respondent’s absence.
Inasmuch as “[t]he question of abandonment is one of fact, and often a close one” (Matter of Riefberg, 58 NY2d at 138 [internal quotation marks and citation omitted]; see Gerteis v Gerteis, 44 AD3d 709 [2007]), and considering the evidence in a light most favorable to petitioner, we find that there are mate *921 rial questions of fact with respect to whether it was respondent who left decedent and, if so, whether her leaving was justified and without decedent’s consent. Although we recognize that the burden on petitioner to prove respondent’s abandonment at trial is both heavy and difficult, particularly considering the evidentiary barriers caused by the Dead Man’s Statute (see CPLR 4519) that arise in these types of proceedings (see Matter of Riefberg, 58 NY2d at 138), we conclude that summary judgment is not warranted to either party on this record (see generally Estate of Goth v Tremble, 59 AD3d 839, 841 [2009]). Accordingly, respondent’s motion should have been denied. To the extent not specifically addressed herein, the parties’ remaining claims have been examined and found to be without merit.
Peters, P.J., Lahtinen and Egan Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted respondent’s motion for summary judgment; motion denied; and, as so modified affirmed.

. The applicable time periods are not clearly established in the record before us.

. Evidence otherwise excludable at trial under the Dead Man’s Statute (see CPLR 4519) may be considered in opposition to a motion for summary judgment (see Phillips v Kantor & Co., 31 NY2d 307, 314 [1972]; Rosado v Kulsakdinun, 32 AD3d 282, 284 [2006]).