(January 23, 1986)

■ LONG ISLAND SAVINGS BANK, Appellant, v ALICE SAVAGE, Individually and as Administratrix of the Estate of ROXANNA EDWARDS, Deceased, et al., Respondents.—Order, Supreme Court, New York County (Seymour Schwartz, J.), entered September 18, 1984, which granted the motion of defendant Alice Savage to dismiss the complaint as against her; which severed and dismissed the counterclaims and cross claims of defendants Robinson and Farrar insofar as they relate to Alice Savage; and, which denied plaintiff's motion for a default judgment and for a finding of contempt, affirmed, without costs.

We affirm this order recognizing, as the dissent points out, that we are invoking a highly technical requirement of the law. However, the statute involved, EPTL 7-5.2, was clear and unambiguous in providing the *only* means by which a Totten trust could be revoked at the time in question. Moreover, contrary to the assertion in the dissent, the result we reach is far from unjust under the circumstances giving rise to this action.

The facts, which are presented in detail in the dissent, indicate that Roxanna Edwards had opened a Totten trust account at plaintiff Long Island Savings Bank in May 1978, in

trust for her niece, defendant Alice Savage. Subsequently, in July 1981, Edwards sought to add two other family members as additional equal beneficiaries and requested that the plaintiff bank do so. Plaintiff bank prepared a "Supplemental Agreement" for Edwards' signature, and the bank also changed the title of the account on the signature card and bankbook.

After the death of the depositor, the originally named beneficiary, Alice Savage, sought payment of the proceeds of this trust account by appearing at the bank, together with representatives of other members of the deceased depositor's family, and presenting the bank book together with the death certificate of Roxanna Edwards, the depositor. The bank refused to transfer the moneys at that time. Instead, Savage was told that before such could be done it would be necessary for her to obtain letters of administration and a tax waiver and it was suggested that she retain an attorney for such purpose. Savage undertook these steps and returned to the bank, accompanied by a representative of her attorney's office, on November 10, 1982, fully armed not only with all of the specifically requested documentation but with the death certificates of the other two "beneficiaries" as well. On this second appearance, however, the bank refused to pay the money to Savage in her capacity as administratrix of the estate, the capacity it had earlier indicated was necessary, but instead insisted upon paying the proceeds of the account to her individually. Bank personnel advised Savage's attorney, in a telephone conversation, that they were "acting upon the advice of their Legal Department" in maintaining that the funds should be paid to her individually rather than in a representative capacity.

Some months later, after inquiries from the representatives of the other estates, the bank instituted the instant action reflecting yet another change of position on its part with respect to the account in question. Despite its earlier determination, upon advice of counsel, that payment of the proceeds of the account should be made to defendant Savage individually, thereby implicitly recognizing, albeit belatedly, that its own initial procedures were inadequate to effectively modify the trust account, it now alleges that Savage has been unjustly enriched by payment of the moneys "by mistake" and, charging her with conversion, it seeks recovery of two thirds of the amount which it paid to her.

We conclude that, despite itself and its erratic behavior, the plaintiff bank correctly paid over the entire proceeds of the

trust account to Alice Savage individually. We find, as did the Justice at Special Term in his careful and thorough analysis, that the trust account in question was not properly changed in accordance with the mandate of EPTL 7-5.2 (1), as then in effect, and that Alice Savage remained the sole beneficiary of the subject Totten trust. Accordingly, we affirm the dismissal of the plaintiff bank's complaint.

We note that no appeal has been taken by the representatives of the estates of the two decedent "beneficiaries" from the provision directing severance and dismissal of their "counterclaims and cross-claims" against Alice Savage, contained in the order entered by Special Term on September 18, 1984. Notwithstanding the inartful use of the term "counterclaims", the impact of that order is limited solely to claims directed against Alice Savage and cannot be construed as finally disposing of any counterclaims asserted against the plaintiff bank and we affirm the order in that context.

During the period in question, EPTL 7-5.2 (1) provided: "The trust can be revoked, terminated or modified by the depositor during his lifetime only by means of, and to the extent of, withdrawals from or charges against the trust account made or authorized by the depositor".

This statute clearly delineated the *only* means by which modification of a Totten trust might be effectuated—that is, either by withdrawal or charges against the account, neither of which here took place. Reference to the legislative history of the statute confirms that a strict construction of such requirements was intended. The recommendation of the Law Revision Commission, which led to the enactment of the section, noted the frequent litigation engendered in construing the Totten trust device and urged the adoption of legislation to impose "objective standards to govern Totten trusts, in place of the case-by-case interpretation based on the depositor's subjective intent" (1975 McKinney's Session Laws of NY, at 1535). The purpose of establishing such exclusive statutory standards was "to achieve certainty and predictability in this area of the law". *(Id.)*

The dissent places emphasis on the fact that the reported cases dealing with the interpretation of this statute involve situations of attempted revocations of Totten trusts by means of the depositor's will. While such factor is not distinguishing, these cases afford instructive insight into the manner in which the statute before us has been applied. In *Matter of Silberkasten* (102 Misc 2d 227, 229), Surrogate Bloom, recognizing that

the statute was to be strictly construed, noted that: "No longer will the question of intent or extenuating facts and circumstances be allowed to cloud the issue as it had done in the past. Either the depositor revoked the account in the prescribed statutory manner or it was not revoked at all." Stressing the legislative intent of the statute to provide certainty and predictability in this area, the court held that "the question to be determined in this and all like cases is not what the depositor intended, but whether he complied with the provisions of the statute." (102 Misc 2d, at p 230.)

In *Matter of Neuman* (106 Misc 2d 135) Surrogate Midonick, citing and quoting from the decision in *Silberkasten (supra)*, also found literal compliance with the terms of the statute to be necessary, with the depositor's intent not an issue. Similarly, Surrogate Gelfand, after reviewing the legislative history, held in *Matter of Flynn* (119 Misc 2d 561, 563) that the "explicit and definitive statutory procedure * * * completely encompasses the subject matter".

That these cases arose in factual contexts different from the present situation in no way diminishes the fact that a strict application of this exclusive statute had been required almost without exception prior to the amendment of the law.

What is particularly unfortunate in this case is that it is plaintiff bank itself that engendered the problems resulting in this litigation. It was the bank that established the procedure for adding additional beneficiaries and supplied the forms, which it had prepared for that purpose, that were on their face statutorily inadequate to effectively modify the trust in accordance with the depositor's desire. Having acted improperly in that regard, it exacerbated the situation by providing incorrect information and directives to the lawful beneficiary, Alice Savage, egregiously subjecting her to unnecessary effort and expense before ultimately recognizing her entitlement to the moneys after "consultation with its Legal Department". When the possibility arose that it might be subjected to responsibility for its conduct to the estates of the others whom the deceased depositor desired to add as beneficiaries, the bank sought to "preemptively strike" by way of this lawsuit wherein it seeks to shift responsibility to the defendant Savage, who acted throughout in good faith and who brought every bit of necessary information to the attention of the bank even in the face of its own turnabout. Clearly, there is no "injustice" in dismissing the action which the wrongdoing plaintiff has brought to extricate itself from a web of its own

making. Aside from the strictures of the statute involved, any other result would indeed constitute an injustice.

Since we find that the account was not properly modified and that defendant Savage is the sole beneficiary, the defendant estates of Irene Farrar and Frances Blackman have no claim against her and the *sua sponte* dismissal of their cross claims against defendant Savage is likewise affirmed. Similarly, plaintiff's motion for contempt against Savage for transferring the funds was properly denied as moot in light of the disposition on the merits. Concur—Murphy, P. J., Sandler, Ross and Ellerin, JJ.

Asch, J., dissents in a memorandum as follows: In my view, the majority, by invoking a highly technical requirement, causes what is, in my opinion, an unfair result. Inasmuch as I believe that this is not an inevitable legal consequence, I respectfully dissent.

Roxanna Edwards, then 84 years old, opened a Totten trust account at the Long Island Savings Bank on May 24, 1978, in trust solely for defendant Alice Savage, depositor's niece. On July 27, 1981, the account title was changed to add two other equal beneficiaries, Frances Blackman and Irene Farrar, both also nieces of the depositor, by means of a supplemental agreement executed by depositor Edwards. The "Supplemental Agreement" provided in pertinent part: "After my death, you are hereby authorized to pay the balance then on deposit to such beneficiaries as survive me, in equal proportions, upon production of the passbook and compliance with your usual administrative requirements. If any beneficiary survives me but dies before such payment is made, the share of such beneficiary shall be payable to the administrator or executor of said beneficiary's estate." The title of the bank account on the signature card and bankbook was also changed by adding the names of the two additional beneficiaries.

At the time of the depositor's death, October 12, 1981, all three beneficiaries were living. Thereafter, beneficiary Irene Farrar died on March 12, 1982, at age 83, and beneficiary Frances Blackman died on June 18, 1982, at age 56. Beneficiary Alice Savage, who had been appointed administratrix of the estate of Roxanna Edwards, went to plaintiff bank on November 10, 1982 and presented the bankbook, the death certificates of the depositor and the two other beneficiaries, her letters of administration and the appropriate New York State tax waiver, and requested payment of the balance to the depositor's estate.

According to Savage, the bank personnel refused such payment, stating that the money did not belong to the estate and insisting upon making the check payable to Savage personally. According to the bank, its employee failed to recognize that even though the two other beneficiaries had died since the depositor's death, their estates were still entitled to a one-third share each, and mistakenly issued a check for the entire amount, $97,165.72, to Savage (the two versions are, of course, not contradictory). Savage took the check and deposited $50,-000 of it in a six-month certificate of deposit and the approximately $47,000 balance in another account, both at Carver Federal Savings and Loan Association, both in the name of the estate of the depositor, Roxanna Edwards.

Thereafter, the personal representatives of the estates of the two other beneficiaries demanded payment of their one-third share from the plaintiff bank. The bank, in turn, demanded that Savage repay at least two thirds of the Totten trust proceeds, which demand was refused. Consequently, plaintiff bank commenced this action seeking return of two thirds of the Totten trust proceeds on theories of mistake, moneys had and received, unjust enrichment and conversion. Defendant Savage moved to dismiss the complaint pursuant to CPLR 3211 (a) (3), (7). Plaintiff bank opposed and cross-moved for a restraining order against transfer of two thirds of the Totten trust proceeds. (No motion to dismiss the cross claims of the other defendants against Savage was made.)

Special Term granted Savage's motion to dismiss the complaint against her, dismissed counterclaims and cross claims of the representatives of the estates of Blackman and Farrar, and extended a restraint against transfer of two thirds of the Totten trust proceeds pending appeal. The court ruled that depositor Edwards had not validly changed the Totten trust account in July 1981 so as to add the two other individuals as beneficiaries under the provisions of EPTL 7-5.2 (1) and thus the bank's original payout of all proceeds to Savage individually was proper, leaving plaintiff bank and defendants beneficiaries with no claim at all.

Special Term reasoned that the history behind the statute mandated a strict construction and that any harshness in result would have to be considered by the Legislature. The majority of this court would affirm the determination and its rationale. I disagree, however.

EPTL 7-5.2 (1), as originally enacted, provided: "The trust can be revoked, terminated or modified by the depositor

during his lifetime only by means of, and to the extent of, withdrawals from or charges against the trust account made or authorized by the depositor."

The section was enacted in 1975 at the suggestion of the Law Revision Commission (recommendation of the Law Revision Commission, 1975 McKinney's Session Laws of NY, at 1534). The Commission stated that the proposed legislation would clarify questions concerning Totten trust accounts which had given rise to litigation since *Matter of Totten* (179 NY 112) was decided in 1904. It recommended the statutory section "[t]o render the delivery of the passbook (or other acts of the depositor) ineffective to complete a lifetime gift of the funds on deposit, thus requiring that the form of the deposit be altered or that the funds be withdrawn and delivered to the beneficiary in order to complete the gift." (Recommendation of Law Revision Commission, *op. cit.,* at 1535.)

Mrs. Edwards did not withdraw the funds and open a new Totten trust account, as Special Term and the majority would presumably have had her do. However, she did alter the form of the deposit, which the Law Revision Commission equated with withdrawing the funds.

The Law Revision Commission identified three areas of case law conflict which the enactment of the section was designed to correct:

"(1) When the depositor delivers to the beneficiary the passbook evidencing the account, does he intend to complete a gift of the account? * * *

"(2) What is the effect of the depositor's statements which may indicate his intention either to give the account to the beneficiary or to revoke or modify the trust? * * *

"(3) What is the effect of language in the depositor's will which may indicate his intention to modify or revoke the trust?" (Recommendation of Law Revision Commission, *id.,* at 1535, citations omitted.)

None of these three areas is involved in the present situation where the beneficiary is changed by a writing executed by the depositor. In addition, under the circumstances herein, no ambiguous or conflicting acts are presented, nor is there any doubt as to the depositor's intent, and thus the statute does *not apply to render the change* in beneficiary ineffective *(see, Korton v Fie,* 128 Misc 2d 333).

The cases relied upon by Special Term for a "strict" construction of the statute involved trust accounts which had purportedly been revoked by the depositor's last will and

which held that such revocation was ineffective since the testators did not specifically identify the trust accounts, as expressly required by EPTL 7-5.2 (2). Here, the trust account was amended in a transaction directly involving the bank, and the subject Totten trust account was, of course, specifically identified in the supplemental agreement amending the account.

Finally, it must be noted that the Legislature amended EPTL 7-5.2 after the instant decision herein. That section now provides: "(1) The trust can be revoked, terminated or modified by the depositor during his lifetime only by means of, and to the extent of, withdrawals from or charges against the trust account made or authorized by the depositor or by a writing which specifically names the beneficiary and the financial institution. The writing shall be acknowledged or proved in the manner required to entitle conveyances of real property to be recorded, and shall be filed with the financial institution wherein the account is maintained." (L 1985, ch 89 [eff Sept. 1, 1985].)

It appears, therefore, that the Legislature recognized that the interpretation of the prior statute by Special Term prevented a change in a trust account by a depositor in a situation where no ambiguity existed and decided to clarify the law. The lack of an acknowledgment herein should not deny effect to the change of beneficiaries in the supplemental agreement. In 1981, when the agreement was executed, no one could reasonably have anticipated the future imposition of an acknowledgment requirement. There also is no suggestion of fraud or undue influence, which the acknowledgment is designed to insure against. The new requirement of an acknowledgment was instituted to protect innocents from fraud. It should not be invoked by this court to bring about an injustice.