OPINION OF THE COURT
Leonard B. Austin, J.
In this case, the applicability of the long-standing rule enunciated in Matter of Totten (179 NY 112 [1904]), which was codified in EPTL 7-5.2, has been called into question in the context of the estate of a divorced settlor/depositor who never revoked the Totten trust accounts he created during marriage which continued to run in favor of his former wife after their divorce and upon his death.
Background
Plaintiff married Nick G. Nicholas on November 10, 1975. They remained together until approximately 1990, when they physically separated. They entered into a formal separation agreement dated June 26, 1995. Thereafter, they were divorced on December 19, 1995 in the Supreme Court, Orange County.
In dealing with the division of property, the separation agreement provided: “3. Except as set forth herein, each party shall own, free of any claim or right of the other, all of the items of property, real, personal or mixed, of any kind, nature or description and wheresoever situate, which are now owned by him or her, or which are now in his or her name, or to which he or she is, or may be beneficially entitled to which may hereafter belong to or come to him or her with full power to him or to her to dispose of the same as fully and effectually in all respects and for all purposes as if he or she were unmarried.” The agreement also made provision for the standard waiver of each other’s estate and the distribution of marital property. Significantly, however, the parties addressed various bank accounts in paragraph 5b of the agreement which provides: “The parties agree and acknowledge that any and all bank accounts, held jointly or otherwise, and any and all personal property, owned jointly or otherwise and not specifically mentioned in this agreement, have been distributed equitably and to the mutual satisfaction of the parties, prior to the execution of this agreement.” (Emphasis added.) There is no dispute but that af *21 ter the time of the separation agreement execution and the divorce that was granted and entered between plaintiff and Mr. Nicholas, Mr. Nicholas maintained various bank accounts with defendants Chase Manhattan Bank (Chase), Flushing Savings Bank, F.S.B. (Flushing S.B.) and Queens County Savings Bank (QCSB).
During the time of the marriage, Mr. Nicholas had placed various funds into Totten trust accounts for the benefit of plaintiff. After the physical separation of the parties, Mr. Nicholas maintained the accounts. Likewise, after the separation agreement was executed in 1995 and the parties were divorced later that year, Mr. Nicholas continued to maintain the Totten trust accounts as he had prior thereto. They remained intact even after Mr. Nicholas’ execution of his last will and testament on June 15, 1998. The will, a simple one-page document, makes no mention of the various bank accounts which continued to name plaintiff as the beneficiary.
As of the date of the death of Mr. Nicholas, the various accounts which he maintained for plaintiffs benefit had the following balances:
Bank Account Number Amount
Chase 1545032398 $ 96,997.59
Chase 201312190 $130,617.89
Chase 305607227201 $110,933.62
QCSB 40-1381912 $ 89,451.35
Flushing S.B. 7909070145 $ 19,442,99
TOTAL $447,443.44
This represents approximately 36% of the taxable estate of Nick Nicholas.
There is no dispute with regard to the manner in which Mr. Nicholas handled the five subject accounts after the divorce. That is, he received regular statements and year-end 1099 forms. He paid taxes on the interest income realized on each of the accounts. Each account was entitled “Nick G. Nicholas in trust for Rita Nicholas.” During his lifetime, Mr. Nicholas never changed the beneficiary of these five accounts nor did he make a testamentary revocation of them although he clearly had the right and ability to do so.
In this action, plaintiff seeks a declaratory judgment as against the three bank defendants as well as Demos G. Nicho *22 las, the executor of the estate of Nick G. Nicholas (the estate), establishing her right to the various accounts being held by the bank defendants.*
By way of counterclaim, the estate seeks a declaratory judgment declaring that it is entitled to all of the funds held by the bank defendants in the disputed accounts as of the date of the separation agreement between plaintiff and Nick G. Nicholas.
In their answers, the bank defendants essentially deny the allegations set forth in the complaint and allege, as affirmative defenses, that they are stakeholders in the disputed accounts and that the complaint fails to state a cause of action. The estate answered the complaint by denying the essential allegations pleaded therein and interposing various affirmative defenses as single word or phrase concepts such as waiver, estoppel, release, accord and satisfaction, renunciation, fraud in the inducement and failure to state a cause of action. None of these affirmative defenses is pleaded with specificity. In addition, the estate interposed counterclaims against plaintiff and the various bank defendants seeking a declaration of the estate’s rights to the disputed funds.
Plaintiff and the estate cross-move for summary judgment on what are essentially undisputed facts. In addition, Chase moved for discharge of the claim against it by permitting the payment of the disputed funds held by it into court. By stipulation executed by counsel for the parties, a segregated account for the disputed Chase account funds was created. In so doing, Chase was discharged from liability and this action, as against Chase, was deemed dismissed with prejudice. The stipulation was so ordered by this court on May 8, 2000.
Contentions of the Parties
A. Plaintiff
Plaintiff argues that the disputed accounts were created as revocable trusts by Nick Nicholas. Upon his demise, in the absence of a valid revocation, as a matter of law, the accounts became the property of plaintiff.
B. The Estate
The estate argues that notwithstanding the provisions of EPTL 7-5.2 and Matter of Totten (179 NY 112, supra), the separation agreement between the parties terminated any right or claim plaintiff may have had in the disputed accounts by virtue of the language of the agreement and the intention of *23 the parties. The estate argues that, in effect, the Equitable Distribution Law (Domestic Relations Law § 236 [B]) would be abrogated by the application of EPTL 7-5.2 under the circumstances of the separation agreement entered into between the parties. In so doing, the estate urges that the settlement agreement of 1995 between the parties take precedence over EPTL 7-5.2.
C. Flushing S.B.
Flushing S.B. argues that since Matter of Totten (supra), and the codification thereof, via EPTL 7-5.2, predates Domestic Relations Law § 236 (B), the advent of equitable distribution, in effect, changes the rights of parties with regard to the Totten accounts. In addition, Flushing S.B. urges, along with the estate, that upon the execution of the separation agreement, plaintiff and her then husband should have been viewed as having predeceased each other so as to effectively negate EPTL 7-5.2.
Discussion
For nearly a century, the rule has been clear that: “A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.” (Matter of Totten, supra, 179 NY, at 125-126.)
The rule enunciated in Totten (supra) was codified in EPTL 7-5.2 which sets forth the terms and conditions under which a revocable or Totten trust is created and revoked. The thrust of EPTL 7-5.2 is that if the beneficiary survives the settlor/ depositor of the account, and the trust account has not otherwise been revoked, terminated or modified under the terms of the will of the depositor or by means of withdrawal of the funds, the beneficiary has the right to the funds as they exist on the date of death, free and clear of all claims. (EPTL 7-5.2 [4].) Under such circumstances, it is the obligation of the depository to pay over those sums contained in the account upon the demand of the surviving beneficiary. (EPTL 7-5.3.)
EPTL 7-5.2 must be strictly construed. See, Long Is. Sav. Bank v Savage (116 AD2d 512 [1st Dept 1986], affd 69 NY2d *24 751 [1987]). See also, Matter of Silberkasten (102 Misc 2d 227, 229 [Sur Ct, Kings County 1979]), where Surrogate Bloom, in addressing the passage of EPTL 7-5.2 to give certainty to whether a Totten trust was revoked or not held: “No longer will the question of intent or extenuating facts and circumstances be allowed to cloud the issue as it had done in the past. Either the depositor revoked the account in the prescribed statutory manner or it was not revoked at all.” No such revocation occurred here.
The estate and Chase argue strenuously that upon the adoption of the Equitable Distribution Law, the Legislature failed to address the implications of equitable distribution on EPTL 7-5.2. They contend that upon divorce, Domestic Relations Law § 236 (B) should be read so as to provide that the beneficiary spouse under a Totten trust is, upon the entry of the judgment of divorce, to have predeceased the depositor/settlor spouse. Thus, under EPTL 7-5.2 (3), the disputed accounts would belong to the estate notwithstanding the title thereon. This court disagrees. To adopt the reasoning and logic of the estate would be tantamount to judicial legislation which this court declines to do. (See, McKuskie v Hendrickson, 128 NY 555, 558 [1891] [“an entirely new (statutory) provision * * * cannot be imported into a statute giving it a meaning not otherwise found therein”]; see also, McKinney’s Cons Laws of NY, Book 1, Statutes § 363.) Certainly, the Legislature had the ability to address the implications and the interrelationship between the Equitable Distribution Law and other statutes that are necessarily affected and impacted by virtue of the dissolution of a marital relationship. The Legislature chose not to address such issue in the nearly 20 years since the adoption of equitable distribution. This court will not now do so.
Further, it is clear that the Legislature has addressed the impact of divorce on testamentary dispositions. EPTL 5-1.4 nullifies and invalidates any testamentary disposition to a spouse named in a will subsequent to the divorce of the parties. The Legislature last addressed EPTL 5-1.4 in 1979, four years after the adoption of EPTL 5-7.2. Had the Legislature intended to address the invalidation of Totten trusts by divorce, it has had every opportunity to do so. Since the Legislature has declined such opportunity, this court cannot, and should not, correct or address such issue here.
Another basis for judicial restraint is the factual scenario presented herein. There is no dispute but that, during the time of the marriage, Mr. Nicholas created certain accounts naming *25 his wife, plaintiff herein, as the beneficiary. The vehicle chosen by him to provide for his then wife was a series of revocable or Totten trusts. At some point thereafter, the relationship between the parties soured and they physically separated in 1990. Although fully alienable and/or revocable by Mr. Nicholas, he maintained the various accounts for the benefit of his wife. Thereafter, on June 26, 1995, the parties entered into a separation agreement which resolved all of their outstanding differences. Both parties were represented by counsel as a part of the negotiation, drafting and execution of the agreement. They so represented in the separation agreement.
Paragraph 10 of the separation agreement states, in pertinent part, that each party “has carefully read and understands this entire stipulation-agreement, is fully cognizant of the terms hereof and is fully aware of his or her rights or obligations in respect to all matters.” Further on in that paragraph, the parties represented that they had the opportunity to have the agreement “reviewed by counsel of their own choosing.” Thus, if the various disputed accounts were disclosed, in the divorce and negotiations leading up to the separation agreement, as they acknowledged therein, pursuant to 22 NYCRR 202.16 (f), such issues were known by the respective counsel of the parties. That plaintiff is an attorney is thus of no moment. Mr. Nicholas had the benefit of counsel and so acknowledged in the separation agreement.
Thus, after the date of the separation agreement and the judgment of divorce, the disputed accounts, which were his to do with as he pleased pursuant to separation agreement paragraph 5b, continued to be maintained by Mr. Nicholas. He could have changed the beneficiary, withdrawn the money or otherwise stated in his will that he revoked the trust. He did none of those. Instead, he continued to receive regular interest statements with the name on the account reflecting that his then former wife remained beneficiary on the account. Mr. Nicholas even paid income tax on the accrued interest. There is nothing submitted on this motion which suggests an intention contrary to maintaining the accounts as he had in the past.
The estate urges that an analysis of the various sections of the separation agreement warrants a finding of the rights of plaintiff in the disputed accounts being terminated. A careful review of the separation agreement does not support the estate’s position. There is no language of revocation of the existing Totten trust accounts which satisfies EPTL 7.5-2. (See, Matter of Silberkasten, supra.)
*26 Paragraph 3 sets forth the right of each party thereto to hold, distribute, alienate or otherwise dispose of any assets they currently hold as they see fit “as if he or she were unmarried.” Likewise, paragraph 5b provides that various assets, not otherwise set forth in the agreement, including “any and all bank accounts, held jointly or otherwise * * * have been distributed equitably and to the mutual satisfaction of the parties, prior to the execution of this agreement.”
Effectively, paragraphs 3 and 5b of the separation agreement gave each party the power to control their assets. Mr. Nicholas determined not to change the disputed accounts. That must be viewed as a conscious determination on his part to continue his then former wife as the beneficiary. The waiver, by the separating parties, in the estate of the other as found in paragraph 9 of the separation agreement does not aid the estate’s claim either. Totten trusts are testamentary substitutes passing outside of the estate even though they may be subject to the marital right of election. (See, e.g., Matter of Agioritis, 40 NY2d 646 [1976].)
Certainly, the estate has come forward with no competent evidence to demonstrate a contrary intention at the time of the agreement, divorce or will. Mr. Nicholas’ brother, Demos, the executor of the will and beneficiary under the estate, in his affirmation in support of the cross motion for summary judgment on behalf of the estate and in opposition to plaintiff’s motion for summary judgment, sets forth only conjecture and analysis of the agreement. He does not even disclose statements from his brother that would lead this court to find a triable issue of fact even though such statements would probably be inadmissable under CPLR 4519, commonly known as the Dead Man’s Statute. (See, Schneider v Schlager, 35 AD2d 544 [2d Dept 1970], affd 28 NY2d 840 [1971].) Nevertheless, evidence which may be precluded at a trial or hearing under CPLR 4519 should not predetermine the result of the summary judgment motion in anticipation of such an objection. (See, Phillips v Kantor & Co., 31 NY2d 307 [1972].) Here, not even the sworn statements of Demos Nicholas, the executor of the estate, rise to the level of testimony, excludable or otherwise, to find a triable issue of fact with regard to his brother’s intention with regard to the existence and maintenance of the disputed accounts from the time of the separation agreement of the parties until the death of Nick Nicholas more than three years later.
There is very little case law that addresses the issue presented here. Extensive research reveals only one reported case *27 involving the rights of a divorced spouse to the proceeds of a Totten trust account upon the death of her former husband. In People v McManus (138 Misc 2d 546 [Sup Ct, NY County 1988]), the defendant, on the death of her late, former husband, withdrew funds from an automated teller machine wherein she accessed a Totten trust account held in his name in trust for herself. She was charged with grand larceny in the third degree. In dismissing the indictment, the court found that one cannot commit larceny when one takes their own property. The court found that upon the death of the depositor, title vested in defendant. The McManus court found that it was the burden of the prosecution to demonstrate that the decedent depositor properly revoked the Totten trust in a manner provided under EPTL 7-5.2 (1) or (2). Similar to McManus, neither the estate nor any of the defendant banks have come forward with proof of a valid revocation of the trust which ran in favor of plaintiff.
Summary judgment, although a drastic remedy, is certainly warranted where, as here, no triable issue of fact exists. (See, Andre v Pomeroy, 35 NY2d 361 [1974]; see also, Alvarez v Prospect Hosp., 68 NY2d 320 [1986].) Neither the estate nor any of the banks have come forward with sufficient evidentiary proof to establish the existence of a material issue of fact which would warrant denial of the motion. (See, Zuckerman v City of New York, 49 NY2d 557 [1980] [mere hope or conjecture is insufficient to create triable issues of fact].) Upon the undisputed facts presented, and as a matter of law, plaintiff is entitled to judgment awarding her all five of the disputed accounts together with appropriate interest and costs. For the same reason, the estate’s cross motion for summary judgment must be denied in its entirety.

 Flushing S.B., upon demand of the estate, paid over the sum of $19,442.99 to the estate.